DEBORAH SHELDON against BLISS and PELTON, Executors of Ebenezer Sheldon.

Where, by an antenuptial agreement, a provision is made that the husband shall provide by will for an annuity to his widow for her life, with an interest in a certain part of his real estate, in lieu of dower or any portion of his estate, and the husband by will gives her an annuity only during her widowhood, he has failed to perform upon his part, and his widow is not precluded from claiming the property which by the statutes is to be inventoried without appraisal and set apart to her use.

A provision in the will of a husband in favor of the wife, will never be construed by implication to be in lieu of dower or the interest the law may give her in the personal property not disposed of by him.

In such a case, the fact that she is in possession of the real estate and some personal property held by her before marriage, and secured to her by the agreement, claiming to hold them under it, will not prevent her from asserting her right.

When the appraisers of an estate omit to set apart to the widow the property exempted for her use by the statutes, and the executors sell the whole at auction, the surrogate having jurisdiction may, upon cause shown, decree the payment to the widow of a sum of money in lieu thereof.

The discretion vested in the appraisers under chapter 157 of the laws of 1842, in setting apart for the use of the widow necessary household furniture, provisions, or other personal property to the value of one hundred and fifty dollars in addition to the articles exempt under the Revised Statutes, has reference mainly to the articles to be set apart, and not to the amount, where the personal property of the testator exceeds that sum. Per WILLARD, Justice.

In March, 1845, an antenuptial agreement was entered into between the respondent and Ebenezer Sheldon, the appellant's testator, both of Floyd, Onéida county, who were about to be married, by which it was provided that in case the marriage should take place, "the said Ebenezer Sheldon shall and will by his last will and testament, in writing or otherwise, give and assure unto the said Deborah Brooker the sum of fifty dollars yearly, each and every year during the said Deborah's natural life, and the use and occupation of one square room and bed room adjoining the same, in the south part of the said Ebenezer Sheldon's dwelling house, and a garden spot on the premises on

which said dwelling house is or shall be situated, and all of the household furniture which the said Deborah Brooker shall have and bring with her at the time of such marriage, and to be by her received and taken to her own proper use and benefit. * * * The above grant is to be received in lieu of dower or any other portion of the said Ebenezer Sheldon's property after his decease." The marriage took place shortly after, and in 1849 Ebenezer Sheldon died, leaving several adult children by a former wife, but none by the respondent. By a last will and testament made in 1848, after giving legacies to several grand-children, amounting together to $800, he made the following provision for her: "I also give and bequeath to my beloved wife, Deborah, a yearly amount to be paid to her out of what remains of my estate after the payment of the aforesaid sums to the above named individuals, *during the time that she remains my widow*, according to a written agreement entered into at the time of our marriage." The residue of his estate he disposed of to other persons. At and after his death the respondent lived in a part of the testator's dwelling house, and retained a small quantity of the personal property which she owned at the time of her marriage, claiming it under the antenuptial agreement. The executors realized from the personal estate $2700, and the real estate was worth $800. In making the inventory of the testator's estate, no exemption was made of any articles which, by the Revised Statutes, are directed not to be appraised, and to remain in the possession of the widow, nor any under chapter 157 of the laws of 1842, but all the personal property of the testator was appraised and sold at auction. Upon application by the respondent to the surrogate of Oneida county he cited the appellants to appear before him and show cause why the inventory of the testator's estate should not be amended. Upon cause being shown, the surrogate decreed the executors to pay the appellant the sum of $150 in lieu of her right to the exempt property to which she was entitled, with her costs. The

Deborah Sheldon *against* Bliss.

appellants appealed from the decree to the supreme court which affirmed the decree at a general term held in the fifth circuit, in February, 1850. From this judgment of the supreme court the appellants appealed to this court. The reasons of the supreme court will be found in the report of the case in 7 Barb. R. 102.

The case was submitted on written argument. The following points were, among others, urged by

Frost & Sprigg for appellants. I. The ante nuptial agreement was a bar to any interest of Mrs. Sheldon in her husband's estate. The statute exempting certain property from the inventory for her benefit, places her right upon the same footing, so far as relates to a marriage article, that the common law did her paraphernalia. (*Toller's Executor*, 180; 1 *Roper, Hus. and W.* 474; 2 *id.* 23; 2 *Atk.* 642.) In the present case the language of the covenant is clear and explicit, and the surrogate manifestly erred in setting aside its provisions. The fact returned that the widow " claimed and was in possession of a part of the house and land, &c.," under the antenuptial agreement, shows that the surrogate virtually decided that she was entitled to both the property specified in the marriage article and that provided by the statutes. This, upon the facts, necessarily must have been the only question before him, as she claimed her rights under the contract, and has never relinquished them. She has never claimed to have the contract rescinded, but insists, as is her right, to have it enforced; and if the decree of the surrogate is affirmed, she necessarily has at the same time the benefit of the antenuptial agreement and of the exemptions, or the benefit of the contract and the benefit of its recision. (4 *Comstock R.* 338, *Clark* v. *Mayor, &c., of New York*). Neither the surrogate nor the supreme court had any right to entertain the question "whether or not the respondent was estopped from insisting on the validity of the agreement." No such question was presented to the surrogate. The respondent did not insist on its invalidity, but on its validity; and the

Sel. IV.—5

sole question for decision was, whether while so insisting, and while claiming and enjoying her rights under the antenuptial agreement, she was also entitled to her exemptions.

II.  The decree professes to extend, and is by the pleadings claimed and admitted to extend to and include exemptions both under the Revised Statutes and under the act of April, 1842.  It is submitted that in any view of the subject the last mentioned allowance is erroneous.  The exemption under the act of April, 1842, is placed exclusively in the discretion of the appraisers; and it is such a discretion as is not the subject of review by the surrogate or any other tribunal.

III.  The surrogate has exceeded his power in making this decree: 1. Where the executor claims and asserts the right to litigate a demand of any sort against the estate in the ordinary court, the surrogate has no power to prevent or enjoin him.  2. The proper parties in interest were not before the surrogate.  The residuary legatees are necessary parties in interest in the subject matter of the decree. (*In re. Parker Ex'r of Walker, Dunlap's Surrogate, Appendix, decisions, page* 31.)

*S. B. Garvin,* for respondents.

GARDINER J.  The surrogate had authority to make the decree in question.

He is authorized to direct and control the conduct, and settle the accounts of executors and administrators, and to administer justice in all matters relating to the affairs of deceased persons, according to the provisions of the statutes of this state (2 *R. S.* 3d *ed.* 318, *sec.* 1, *sub.* 3, 16).

The question we are now considering, assumes that Mrs. Sheldon, under the statutes of this state was entitled to the articles of personal property mentioned in *section* 9, *R. S.* 3d *ed.* 147; and, in addition, to the amount of one hundred and fifty dollars, provided by the law of 1842 (2 *R. S. id. sec.* 11).

No exemption was made by the appraiser's under either statute, and the executors subsequently sold at public auction the property set forth in the inventory.

The proceeds of this sale in the hands of the executors constituted a trust in favor of the widow, to the extent of her interest in, or claim upon the property of the testator under the statute. She might affirm the sale, and it would be the duty of the executors, as trustees, to pay over the avails to the legal and equitable proprietor. If they refused, the surrogate in virtue of his power to control their conduct, "and to administer justice, in all matters relating to the affiairs of deceased persons," could compel their obedience. This he has done by his decree, and no objection is perceived to the exercise of this power.

2d. The surrogate gave the true construction to the statutes upon this subject. The eleventh section, was not a substitute for the ninth and tenth of the former law, but an additional provision. This is obvious from the language of the concluding clause of the section first above mentioned, which is the second section of the act of 1842. Again, it is an established principle, that a provision in the will of a husband in favor of the wife, will never be construed by implication to be in lieu of dower, *or any other interest in his estate given by law;* the design to substitute one for the other, must be unequivocally expressed. So of different statutes in relation to the same subject, one will not be so construed as to repeal the other, unless the legislature so declares, or unless the implication is absolutely necessary.

3d. The antenuptial agreement between the respondent and her husband, is not a bar to any interest of the former in the personal estate of the testator. The supreme court determined correctly, that the respondent looked to a performance and not to the mere covenant of her intended husband, as the consideration of relinquishing claims upon his estate, which would be effected after his death (*Greenleaf Cruise, vol.* 1, *p.* 203, 317). The agreement was not

Deborah Sheldon *against* Bliss.

performed by the testator, who not only omitted to make the provision contemplated by the contract for the respondent, but so disposed of his estate by his will as to place it beyond the power of his executors to make such provision, without departing from his instructions. It is idle to talk of the wife being bound by an agreement which the husband in his lifetime virtually repudiated.

There is as little foundation in the argument, that the widow is concluded by her possession of some part of the property under claim of right through the antenuptial agreement.

If she is concluded, those who claim title under the will must be also; or the estoppel would not be mutual. But the devisees and legatees have not assented to or acquiesced in her claim or possession; and the executors could not because they have no power to bind devisees, by setting apart a parcel of the real estate in opposition to the will of the testator, from which they derived their authority.

The judgment of the supreme court should be affirmed.

MASON, J., read a written opinion in which he arrived at the same conclusions with Judge Gardiner.

WILLARD, J., in a written opinion, concurring in the views of Judge Gardiner, held that the discretion given to the appraisers under the statute of 1842, has reference mainly to the articles to be inventoried and set apart for the widow, and can never be referable to the amount when the personal property left by a testator exceeds in value one hundred and fifty dollars.

Judgment affirmed.