MARMADUKE WOOD, Executor of PORTER WOOD, deceased, Respondent, *v.* PARDON S. BROWN, his co-executor, Appellant.

One of two executors may maintain an action in equity, to call his co-executor to an account.

Although the complaint is inartificially framed to compel an accounting, if the facts stated plainly show that it is a case where the defendant should render an account, the court may compel an accounting under the prayer for general relief.

The creditors, legatees, and next of kin, are not necessary parties, except in case of a *final* accounting.

Where the trusts under a will vested in the executor are distinguishable from those attached to his office, the court may dismiss him as to the former, and not as to the latter. But if one of several executors is guilty of misconduct in his dealings with the estate, the court will interfere, in a proper case, to regulate his conduct and compel him to place the notes, bonds and other securities in his possession belonging to the estate, in such custody as to enable his co-executors to obtain access to the same; and may direct the mode in which he shall co-operate with his co-executors in discharging his duties as executor under the will.

*It seems* the surrogate is authorized, under the statutes of this State, upon an accounting by the executor, to administer the same remedy.

APPEAL from the judgment of the General Term, modifying the judgment of the Supreme Court, rendered upon the report of a referee.

The plaintiff, as executor and legatee under the will of Porter Wood, deceased, brought this suit against the defendant, his co-executor, to obtain an injunction and a decree revoking his appointment as one of the executors, on the ground of his misconduct.

The referee to whom the cause was referred for decision finds, as a matter of fact, that the defendant has been guilty of wrong, misconduct and mismanagement in the execution of his trust as executor, in his obtaining and retaining possession and control of the notes, bonds and mortgages belonging to the estate, to the exclusion of the plaintiff, and in refusing the plaintiff access to the same, equal to and in common with him, while he greatly embarrassed the admin-

istration of the estate, and jeopardized the interests of the beneficiaries under the will; that the personal property consisted mainly of stocks, bonds and mortgages, notes and accounts, which had been kept by the testator in a small tin trunk, and deposited for safe keeping in the Bank of Chenango.

The referee also finds, as a matter of fact, that a lack of harmony of feeling and action existed between the plaintiff and defendant as to the custody and keeping of said trunk and contents, whereupon they mutually agreed it should be kept in the bank under the care of the president, and the funds in their hands, or which should thereafter come into their hands, should be deposited in the bank to their joint account, and only drawn out upon their joint order, and both should at all times have access to said trunk and contents. The trunk was left at the bank under this arrangement. The referee finds, however, as matter of fact, that the defendant took away the trunk, denied the plaintiff access to it, and otherwise violated his agreement. He thereupon directed a judgment removing the executor, unless he gave security conditioned for the faithful administration of his duties as executor and trustee of the estate.

On appeal to the General Term this judgment was modified, and instead of a decree revoking his appointment, a decree was entered virtually confirming the agreement as to the custody of the funds. It required the defendant to deposit the papers belonging to the estate in the Bank of Chenango, in the custody of the president, where the plaintiff should have free access to the same, and to deposit any and all moneys in his hands or under his control as executor, in the same bank, to the joint credit of himself and the plaintiff. It further directed that the moneys thereafter collected by the said executors, or either of them, should be promptly, after such collection, deposited in the same bank to their joint credit as such executors, and should be drawn out only on their joint check or order. The injunction order was continued until the defendant complied with the decree, and leave was given for either party to apply for further directions upon the foot-

ing of the decree. In the judgment or decree entered upon the report of the referee, the plaintiff's costs were made a charge upon the estate, and the defendant was left to pay his own costs. The General Term affirmed the decree in respect to the costs, but without costs of the appeal.

The testator, Porter Wood, left an estate worth about $25,000. He made the parties to this suit his executors, and constituted them, together with Nelson O. Wood and Chapman T. Brown, trustees, to whom he bequeathed the residue of his estate, after payment of his debts and certain legacies to the amount of five or six thousand dollars, with directions to invest the said residue in a particular manner, and pay the income thereof to his wife (who is sister of the defendant), during her life; and on her death, he gave one-half of said residue to his three brothers (the plaintiff being one); the other half he gave to his sister, Phebe Chapel.

*H. R. Mygatt*, for the appellant.

*Rexford & Kingsley*, for the respondent.

MORGAN, J. When the suit was commenced, the defendant had not entered upon his duties as trustee in respect to the residue of the estate, for at that time the executors had not succeeded in collecting in the estate; nor was it then known what the residue would be. Indeed, the executors had not then ascertained the debts, so that they could pay the legacies without taking security from the legatees, for reimbursement, in case of a deficiency of assets to pay debts and legacies. Their duties as executors, and as trustees for the residuum of the estate, were entirely different. As executors, it was their duty to collect in the property, to pay the debts and general legacies, and then, on ascertaining the residuum, join their associate trustees in the investment and management of the trust estate, in accordance with the directions of the will. So far as the plaintiff sought to remove the defendant as trustee under the will, in respect to the residuum of the testator's estate, there is no ground upon which he was entitled to succeed.

Whether a court of equity, independent of the power conferred upon it by the Revised Statutes, could revoke the defendant's letters, may admit of great doubt. It is supposed by the appellant's counsel that the power is vested in the Surrogate's Court, and that a court of equity will decline jurisdiction when the parties have a statutory remedy at law. Without stopping to inquire how far this is true, I will observe, that an examination of the statute will show that the surrogate had no authority to revoke the letters testamentary granted to the defendant in this case for any of the causes specified in the report of the referee. The causes which authorize the surrogate to revoke letters testamentary are mentioned in the statute (2 R. S., 85), and do not include this case.

As the defendant had not discharged his duties as executor, and taken upon himself the character of trustee, it is difficult to maintain the authority of the Supreme Court to remove him for the misconduct specified in the report of the referee. The cases in which a *trustee* may be removed are specified in our statutes.

By § 70 of 1 R. S., p. 730, "upon the petition or bill of any person interested in the execution of a trust, and under such regulations as for that purpose shall be established, the Court of Chancery may remove any trustee who shall violate, or threaten to violate, his trust, or who shall be insolvent, or whose insolvency shall be apprehended, or who, from any other cause, shall be deemed an unsuitable person to execute the trust." By section 71, authority is given to the chancellor to appoint a new trustee, and when, in consequence of such removal, there shall be no acting trustee, the court, in its discretion, may appoint new trustees, or cause the trust to be executed by one of its officers under its direction. By section 72, this authority is confined to cases of *express* trusts only. The executors, being authorized by the will to sell lands for the purpose of paying debts and legacies, may, in this respect, be regarded as trustees of an express trust. (1 R. S., 728, § 55.)

But the referee did not find, as a matter of fact, that the defendant was guilty of any misconduct in the execution of his trust in respect to the sale of the testator's real estate; and I am of opinion, therefore, that it was not a case for invoking the authority of a court of equity to remove him from his trust, under the provisions of the Revised Statutes. (*In the matter of the petition of Van Wyck*, 1 Barb. Ch., 565.) But when his duty as an executor has terminated, and he has become simply a trustee, it is believed that a court of equity may remove him under the power conferred upon that court by the Revised Statutes. (See *Leggett v. Hunter*, 25 Barb., 82.) Conceding that the statutes of this State did not confer jurisdiction upon either the surrogate or the chancellor to remove the defendant from his trust, as executor, upon any of the grounds of misconduct specified in the report of the referee, the question remains, whether the Supreme Court, by virtue of its general authority over executors and trustees, may interfere to regulate the conduct of the defendant, and give him direction as to the manner in which he shall perform his duties as executor. For the decree, as modified by the General Term, does not undertake to go beyond this; and so far as the original decree undertook to remove the defendant from his trust as executor, the error in that respect, if it was an error, has been corrected.

The complaint may be said to entitle the plaintiff to the relief finally granted to him, without being sufficient to entitle him to a decree removing his co-executor from his trust.

It is not to be dismissed because it asks for more than the court is authorized to grant, if, upon the facts stated and found by the referee, the plaintiff is entitled to the relief awarded to him by the final judgment.

As to trustees, there can be no question as to the authority of the Supreme Court to remove them for any misconduct which endangers the trust property. (Story's Eq., § 1289.) And this jurisdiction exists and will be equally enforced, whether the instrument creating the trust does or does not contain a power to appoint new trustees. (Hill. on T., 191.)

The court will adapt its relief to the exigencies of the case, and having first removed the trustee, will then proceed to supply the vacancy if necessary. (Id.)

This relief has been granted when the trustees could not discharge the trust through disagreement among themselves. (Id., citing *Bagott* v. *Bagott*, 10 Law Jour., N. S., ch. 116; Story's Eq., § 1288.)

But the difficulty still exists, that a mere executor is not properly to be considered a trustee within the meaning of the statute, or within the meaning of the rule of a court of equity, conferring authority upon that court to interfere with the execution of his trust, by removing him and appointing others to take his place. But when the trusts under a will, vested in the executor, are distinguishable from those attached to his office, the court may dismiss him as to the former and not as to the latter. (*Craig* v. *Craig*, 3 Barb. Ch., 76; *Matter of Wordsworth*, 2 id., 381.) It is important, therefore, to consider whether the court may interfere in such a case, not to remove the executor, but to regulate his conduct and direct the mode in which he shall coöperate with his co-executor in discharging his duties as executor under the will.

And, in my opinion, the surrogate may interfere, either at the suggestion of the co-executor or of the creditors and legatees, in case the defendant refuses to perform any duty which the law casts upon him and which is necessary to be done to preserve the estate. (2 R. S., 4th ed., 277, § 57; Act of 1837.)

The surrogate is authorized to *direct and control the conduct* and settle the accounts of executors and administrators, and to administer justice in all matters relating to the affairs of deceased persons, according to the provisions of the statutes of this State. (2 R. S., 220, § 1, subs. 3 and 6.) This language is comprehensive enough to reach the case at bar. In *Sheldon* v. *Bliss* (8 N. Y., 31), this court determined that the surrogate had the right, under these provisions of the statute, to cite an executor before him and cause him to amend his inventory. The same authority is conferred upon

the surrogate in relation to guardians for minors. (2 R. S., 220, § 1, sub. 7.) In *Seaman* v. *Durea* (11 N. Y., 327), Judge ALLEN, in delivering the opinion of this court, declared it to have been the "intent of the legislature, in conferring this jurisdiction upon surrogates, to provide an inexpensive and summary process for the settlement and adjustment of the accounts of guardians, and to supersede the necessity of a resort to a court of equity for that purpose." This language is equally applicable to the case of executors and administrators.

This power is not arbitrary, and can only be invoked in aid of some regular proceedings which the statute authorizes to be taken against executors and administrators. The surrogate cannot, for instance, prevent an executor from defending or prosecuting a suit, in which he must consult his own judgment, and act upon his own responsibility. (*In the matter of Parker*, 1 Barb. Ch., 154.) Nor can he interfere with an executor to control him while in the orderly discharge of his duties. But an executor may be required by an order of the surrogate, at any time after eighteen months from the time of his appointment, to render an account of his proceedings. This may be done on suggestion of a co-executor, and without any application from the creditors, legatees or next of kin. (2 R. S., 92, § 52.)

Upon the hearing, the surrogate may doubtless require the executor to exhibit the notes, bonds, mortgages and other securities belonging to the estate (Id., § 54); and may make any order which he shall deem necessary in relation to their custody, so as to permit his co-executor properly to discharge his own duties as executor of the estate. Such an order may be enforced by attachment, and this, perhaps, gives all the remedy which was necessary under the facts found by the referee in the case at bar.

It does not, however, follow that a court of equity may not exercise the same, or concurrent, jurisdiction. I think, however, no case will be found where the court has entertained a bill merely to establish the relations which should exist between the executors. One executor is not generally

responsible for the wrongful act of the other, unless he joins in it or neglects to prevent it, when he could do so by proper care. (Williams on Ex., 1548; *Langford* v. *Gascon*, 11 Vesey, 335; *Clark* v. *Clark*, 8 Paige, 152.) But they are responsible to, and may at any time be called to account by, creditors, legatees, heirs-at-law and next of kin; and courts of equity are in the constant habit of exercising a control over them when a bill is filed for an account of their proceedings. Most of the cases cited are cases of this sort, or cases where the bill charged an apprehended insolvency. Such was the case of *Ulmendorf* v. *Lansing* (4 Johns. Ch., 560). And in cases of insolvency, or apprehended insolvency, the court generally appoints a receiver. (Eden on Injunctions, 352.)

The court, however, may doubtless adapt the remedy to the exigency of the case.

And one of several executors, who is also a residuary legatee, may cite his co-executor before the surrogate or maintain a suit for his share of the residue. (Williams on Ex., 1779.) If a bill is filed against an executor for an account, upon the single charge that he has proved the will, may be founded every inquiry which may be necessary to ascertain the amount of the estate, its value, the disposition made of it, the situation of any part remaining undisposed of, the debts of the testator, and any other circumstance leading to the account required. (Mitford on Pl., 45; Williams on Ex., 1732.)

The relief granted to the plaintiff, in the case at bar, could, doubtless, be awarded in any proper action for an account in which the defendant was a party. In a suit against him for an accounting, the court having obtained jurisdiction to compel an account, might have confirmed the agreement in question as to the custody of the papers and the manner in which the moneys of the estate should be deposited and drawn out of bank.

In all cases of bills brought by creditors or legatees or distributees for a settlement of the estate, the court may direct the assets to be paid into court, and that the papers and writings in the hands of executors shall be deposited

with a master for the benefit of those interested. (Story Eq. Jur., §§ 839, 842.)

We have already seen that, after eighteen months from the appointment of executors, they may be cited before the surrogate to render an account of their proceedings. And having rendered an account, the surrogate will, upon application, make such order in the case as shall be just and equitable. (Dayton's Surrogate, 480.) This may be upon the application of any person having a demand against the personal estate of the deceased, either as creditor, legatee or next of kin. (2 R. S., 92, § 52.) It is not necessary that this should be a final account, although it may be made final, in which case the creditors, legatees and next of kin must be made parties. (2 R. S., 93.)

These provisions, as we have seen, are ample to compel an executor to disclose his proceedings; and when we reflect that the surrogate may "direct and control his conduct," they furnish a very simple and cheap remedy in a great majority of cases, and, I think, are quite sufficient to correct the defendant's misconduct as disclosed by the report of the referee in the case at bar.

But, then, it must be conceded that courts of equity, as a general rule, have a concurrent jurisdiction with surrogates' courts in matters of accounting, as against executors and administrators. (*Rogers* v. *King*, 8 Paige, 210.) These courts may furnish a more comprehensive remedy, for they may proceed by injunction to restrain the further proceeding of executors until an account can be taken, if there is danger of injury to the estate.

The case at bar was a proper one to call on the defendant to render an account of his proceedings. If a final settlement was not contemplated, it was not necessary to make the other legatees parties. The decree does not affect them. If further proceedings are taken upon the basis of the decree, they may be brought in, if necessary; but there does not seem to be any reason for bringing them in to be heard in relation to the matters which were finally disposed of by the judgment.

The complaint is not very artistically drawn to compel the defendant to render an account; but the facts stated, I think, plainly show that it is a case where he should render an account of his proceedings, and such remedy may be obtained under the prayer for general relief.

There is no other ground, perhaps, upon which the action can be sustained; but being sufficient to require the defendant to render an account of his proceedings as executor, the court had jurisdiction to grant the particular relief finally awarded.

The judgment below should therefore be affirmed, with costs.

Judgment affirmed.