NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—January, 1886.

## BRENNAN v. LANE.

### *In the matter of the estate of* JOHN BRENNAN, *deceased.*

Neither the grant of authority, contained in Code Civ. Pro., § 2481, subd. 4, to a Surrogate, to enjoin by order an executor or administrator, to whom a citation or other process has been issued, from acting as such until further order, nor the more general clause, id., § 2472, subd. 3, permitting him "to direct and control the conduct" of such officials, justifies an interference with the right of one of two executors, etc., to control and dispose of assets without the co-operation of his associate, merely because of a disagreement between them as to the time when, or circumstances under which, the same can most advantageously be exercised.

Upon an application by the administratrix of decedent's estate for an order restraining her associate in office from continuing to carry on the business in which decedent had been engaged during his lifetime, she alleging that the management of the business had been profitable to the estate, and that an early sale of the property therein employed was unadvisable,—

*Held,* that the court ought not to interfere, but should leave those to whom the law had committed the estate to decide in their discretion what course to pursue, subject to the liability to be adjudged upon a settlement of their account.

The authorities defining the power of the courts to control the conduct of executors and other trustees in exercising the functions of their office— reviewed.

APPLICATION by Mary Jane Brennan, administratrix of decedent's estate, for an order restraining William Lane, her associate in the administration, from selling certain assets. The facts are stated in the opinion.

W. A. KEELER, *for administratrix.*

A. COHEN, *for administrator.*

THE SURROGATE.—The administratrix of this decedent's estate asks for an order restraining the administrator, who is associated with her in its management, from selling certain property belonging thereto. She alleges, in her moving affidavit, that she has continued since the decedent's death, to carry on the livery stable business which he conducted in his lifetime, at No. 164 Division street, in this city; that her management of that business has been profitable to the estate; that she is informed and believes that it is the purpose of the respondent to make early sale of the horses, carriages and other property used in such business; that such sale would at this season of the year be inadvisable and ought, for the best interests of the estate, be postponed until April next.

The administrator alleges in reply that he is acquainted with the value of horses, carriages, harness, etc.; that this estate is insolvent; that it is indebted to the firm of which he is a member in the sum of $4,200; that he is unwilling that the assets for which he is liable should be longer at the risk of the business carried on by the administratrix, and that for reasons specified by him a sale thereof should be effected at once. He declares that his views are shared by the sureties on the administration bond, and has filed their affidavits in support of his assertion. Answering affidavits have been presented in behalf of the administratrix.

Now, under these circumstances, has the Surrogate jurisdiction to grant the relief for which the administratrix prays? And, if he has such jurisdiction, should that relief be granted?

. *First.* The only statutory provision which expressly
authorizes the Surrogate to restrain an executor or
administrator from exercising the functions of his
office is subd. 4 of § 2481 of the Code of Civil Pro-
cedure.   It is there declared that a Surrogate may
" enjoin by order an executor, administrator, etc., *to
whom a citation or other process has been duly issued*
from acting as such until the further order of the
court."   This grant of authority is manifestly not
broad enough to warrant the issuance of such an
order as is here sought.

Counsel for the administratrix invokes in her be-
half the jurisdiction with which this court is vested
by § 2472.   That section provides (subd. 3) that the
Surrogate may " *direct and control the conduct of
executors, administrators and testamentary trustees.*"
This power of direction and control is limited by the
concluding words of the section, which declares that
it " must be exercised in the cases and in the manner
prescribed by statute."

A similar limitation was placed upon the Surro-
gate's authority by the statute which was in opera-
tion before the Code was enacted (R. S., part 3, ch. 2,
tit. 1, § 1; 3 Banks, 6th ed., 325).   The meaning of
this expression, " to direct and control the conduct
. . . . . of executors and administrators," as used in
the statute just cited, has been on several occasions
the subject of judicial determination.

In 1845, Chancellor WALWORTH held, in Matter of
Parker (1 *Barb. Ch.*, 154), that the power conferred
'by the words in question would not warrant the Sur-
rogate in restraining an executor from disputing in a

court of law the liability of his testator's estate upon such testator's promissory note, or from prosecuting a bill of discovery for ascertaining the consideration upon which such note was based.

"It is difficult," said the Chancellor, in the case just cited,*" to say *what* direction and control over executors and administrators was intended to be given, . . . . . but it is hardly to be presumed that the legislature intended to confer such a power as is claimed in this case. . . . . . The only course is to leave it to the executor under his oath of office faithfully and honestly to discharge his duty, . . . . . and if he violates that duty, he should not be allowed in his accounts the loss which the estate sustains."

Bliss v. Sheldon (7 *Barb.*, 152 [1849] ) was an appeal from a Surrogate's order requiring certain executors, who had filed an inventory, but had neglected to set off any part of the property to their testator's widow as articles exempt, to pay the sum of $150 to such widow, in lieu of what she would be entitled to receive under the exemption laws. In sustaining the order of the Surrogate, which was assailed for alleged want of jurisdiction to make it, the Supreme court said : "Under the third subdivision" (of § 1, *supra*) " the Surrogate has plenary power to control the conduct of executors and administrators. The words are general, and would seem to be directly applicable to a case in which an executor *persists in exercising the functions and discharging the duties of his trust erroneously or irregularly ;* and any person who suffers any injury by the erroneous action of the executor in his

proceedings in the Surrogate's office may lawfully call upon the Surrogate to control his conduct."

In Seaman v. Duryea (10 *Barb.*, 523 [1851] ), the Supreme court, in construing the provision of the Revised Statutes which empowered Surrogates " to appoint guardians for minors and to direct and control their conduct," said : " The power to direct and control the conduct of guardians cannot be a barren power. . . . . . The authority to appoint and remove guardians, and to direct and control their conduct, given by law to a court of justice, must comprehend the power to compel them to do *whatever the law requires them to do.*" In accordance with this interpretation, the court held that a Surrogate had jurisdiction to decree the time when, the person to whom, and the manner in which a superseded guardian should deliver over the property of his ward.

Dubois v. Sands (43 *Barb.*, 412 [1864] ) was a proceeding in which a Surrogate had ordered an executor, who was directed by his testator's will to expend for the benefit of children the interest of a certain legacy, as their necessities required, to account and pay over such interest into the Surrogate's court. The Supreme court held, on appeal, that the statute which empowered a Surrogate " to direct and control the conduct of executors," etc., gave him authority to compel executors to perform what was their manifest duty under their testator's will.

Wood v. Brown (34 *N. Y.*, 337 [1866] ) was an appeal from a Supreme court judgment in an action wherein an executor had sought to obtain an injunction against his co-executor and a revocation of his

letters on the ground of gross maladministration. It was held that, under the circumstances there appearing, the Supreme court was authorized to control the conduct of the defendant, so far as to compel him to place the assets of the estate where they would be accessible to the plaintiff, and so far, also, as to prescribe the mode in which the defendant should cooperate with his associate in discharging his duties under the will.

MORGAN, J., in the course of his opinion affirming the judgment below, declared that a Surrogate might interfere to control the conduct of an executor in case such executor refused " to perform the duties which the law casts upon him, and which are necessary to preserve the estate." " *This power*," he added, *is not arbitrary, and can only be invoked in aid of some regular proceedings which the statute authorizes to be taken against executors and administrators.* The Surrogate cannot, for instance, prevent an executor from defending or prosecuting a suit, *nor can he interfere with an executor to control him while in the orderly discharge of his duties.*"

Burt v. Burt (41 *N. Y.*, 46 [1869], was a suit between two executors as to the custody of funds. The Supreme court adjudged that the defendant should place the same in the custody of a person specified, and that thereafter both the plaintiff and defendant should put all moneys received by them in a designated depository, to be drawn out only on their joint check. It was held on appeal that, in the absence of any mismanagement or misappropriation of assets, or of any misconduct likely to put in serious

jeopardy the interests of creditors or legatees, the Supreme court had no power thus to interfere between executors. WOODRUFF, J., writing for reversal (all his associates concurring), said that the case of Wood v. Brown (*supra*) could only be upheld on the ground that the executor whose conduct was there subject to control, had been guilty of misconduct in office, had greatly embarrassed the administration of the estate, and had imperilled the interests of the beneficiaries under the will.

No case decided since Burt v. Burt has fallen under my observation which takes any broader view than is there declared, respecting the right of courts to control the conduct of executors and administrators. Even if the allegations in the affidavits of the administratrix were wholly uncontroverted, I should feel bound, therefore, to deny this application.

The general right of an executor or administrator to sell at his pleasure the personal property of his decedent's estate, in order to provide means for the payment of debts, and of legacies or distributive shares, is, of course, well settled (Rogers v. Squires, 26 *Hun*, 388; Bradner v. Faulkner, 34 *N. Y.*, 347; Sherman v. Willett, 42 *N. Y.*, 146).

It is equally well settled that, where an estate has two or more executors or administrators, each of them has full control of the assets, and may dispose of the same without the co-operation of his associate (Douglass v. Satterlee, 11 *Johns.*, 16 ; Wheeler v. Wheeler, 9 *Cow.*, 34 ; Hertell v. Bogert, 9 *Paige*, 52). The enjoyment of this right cannot be lawfully restrained by the Surrogate, merely because of a disagreement

between executors or administrators as to the time when, or the circumstances under which such right can be most advantageously exercised.

The situation, as described in these moving papers, is eminently one in which the persons to whom the law has committed the management of this estate should be permitted to decide, according to their own discretion, what course the best interests of the estate require them to pursue. The decision of the question whether an immediate sale of the livery stable property is desirable, or whether, on the other hand, it is better to delay such sale for three months, involves the exercise of ordinary administrative functions with whose "orderly discharge," the Surrogate is powerless to interfere (Wood v. Brown, *supra*).

*Second.* Even if I had the power to grant this motion, I should not exercise it, in view of the answering affidavits. It is by no means clear that a longer continuance of the business left by the decedent would be advantageous to the persons interested in this estate. It would occasion expense and be attended with no little risk. Except under extraordinary circumstances, such as do not seem to exist in the case at bar, courts are inclined to look with disfavor upon such a course as this administratrix seems disposed to adopt.

Motion denied.