IN THE MATTER OF THE ESTATE OF NATHANIEL GILMAN, DECEASED.

*Surrogate — power of, to control securities in the hands of the executors — to compel their deposit in a trust company.*

When it is made to appear to a surrogate that securities belonging to an estate are not entirely safe or free from risk while remaining in the possession of the executors, he may direct such securities to be deposited in a trust company, there to remain until the further order of the Surrogate's Court.

The facts which will justify the making of such an order, considered and held to exist in this case, and to require the affirmance of an order requiring the executors to deposit all United States bonds and interest-bearing notes, together with their coupons belonging to the estate, in the Union Trust Company.

APPEAL by two executors from an order made by the surrogate of the county of New York, directing the deposit of all the United States bonds and interest-bearing notes, together with their coupons, belonging to the estate of Nathaniel Gilman, which were in the

possession or under the control of the executors, with the Union Trust Company, there to remain until the further order of the Surrogate's Court of the county of New York; and the hearing of a motion made to dismiss such appeal.

*Henry E. Knox*, for the appellants.

*James Hudson*, *Latham G. Reed* and *Raphael J. Moses, Jr.*, for the respondents.

DANIELS, J.:

The order from which the appeal has been taken was made on the 24th of May, 1866, twenty years prior to the argument of this appeal. Because of the delay in bringing the appeal to a hearing, and for the reason that other parties interested in the estate had, under agreement made, received portions of the fund created by the deposit, the motion was made to dismiss the appeal. And without placing any stress upon the latter ground, if it should be important so to direct, the appeal should be dismissed for this great delay in its prosecution. An explanation of it has to a certain extent been made, but that explanation fails to excuse the delay to bring the appeal to a hearing during the long period that has followed the service of the petition.

But in the view which has been created by the examination of the case, it is not considered important, for the protection of the rights or interests of the moving parties, that a dismissal of the appeal should be ordered. The executors of the estate, to whom letters testamentary have been issued by the surrogate of the county of New York, were the only persons affected by the order, and it is these executors who brought the appeal now under consideration.

They claim the order to have been unauthorized, and also that the facts did not justify the surrogate in making it, and thereby requiring the deposit of these securities. The securities affected by the order amounted to the sum of about $210,000, and it was made upon a state of facts indicating to the mind of the surrogate that these securities were not entirely safe or free from risk while they remained in the possession of the executors. And if he was right in deducing that conclusion from the facts which were made to appear, then it followed that the order was legally made by him, for

by the statute it was made his duty to direct and control the conduct of the executors of this estate. (3 R. S. [6th ed.], 325, § 1, sub.3.) This direction has been provided in broad and unqualified language, and seems to have been designed to delegate to the surrogate the power to direct and control the conduct of executors and administrators, so far as that may appear to become necessary for the protection and safety of the property committed to their hands, and to promote its preservation until a distribution can be made of it among the persons entitled to receive it.

The surrogate was also empowered, by subdivision 6 of the same section, to administer justice in all matters relating to the affairs of deceased persons, and that can only be done by such orders as appear to be necessary for the protection and preservation of the estate. The authority of the surrogate under this section, and more especially under section 63 (3 R. S. [6th ed.] p. 99) of the statutes, was considered in *Wood* v. *Brown* (34 N. Y., 337), and it was deemed to justify as broad a construction as that which has now been suggested, for it was there held that the surrogate might make any order he deemed necessary in relation to the custody of the notes, bonds, mortgages and other securities belonging to the estate. And similar in its effect was the decision of the chancellor in *Jenkins* v. *Jenkins* (1 Paige, 243). As to the power of the surrogate to make the order, there accordingly seems to be no reasonable ground for entertaining any substantial doubt. The application was made for it upon the petition of Isaac Redington, who was another of the executors of the estate, to whom the letters testamentary had been issued, and Joanna B. Gilman, the widow of the testator, Anna R. Gilman, Charles B. Gilman, Theophilus Gilman and Frazer Gilman, who were children of the testator, each entitled to one-tenth part of the residue of his estate. This executor, by the language of the petition, appeared to have intended to represent the children of his deceased wife, who was also a daughter of the testator. These children were two in number, jointly entitled to one-tenth of the residue of such estate. Theophilus Gilman and Frazer Gilman were minors, or infants, under the age of twenty-one years, residing with their mother, who by the petition represented their interests in the estate for the protection of the court. It is true that the allegations contained in the petition were not as broadly

made as this, but the statements presented by the executor, Reding-ton, concerning his two children, and by the widow concerning these infants, are consistent with no other conclusion than that they were intended to invoke the aid and assistance of the surrogate for the protection of the rights and interests of these children and infants in this estate, and that was sufficient to render it the duty of the surrogate to consider what prudence and discretion required should be ordered concerning the disposition and safety of these secu-rities. They were securities which could readily be disposed of and the estate deprived of their benefit by any sale of them the executors might be inclined to make. In support of the application, it appeared that the two executors, George F. Gilman and Edward McClellan, failed to co-operate with the executor, Redington, in the management of the property and affairs of the estate. A disagree-ment had arisen between them, and he, as well as the other petitioners, considered that the estate committed to their charge and custody was not managed as the law required that to be done by these acting executors. They had delayed the making and filing of an inventory of the estate from the time they qualified as executors in May, 1861, until the 18th of August, 1863, and that was then filed only under the effect of mandatory directions made for that purpose by the surrogate. After further resistance upon their part, an order was also made on the 4th of November, 1863, requiring the executors to account, but they failed to present their accounts until the 5th of January, 1865, although active proceedings to secure this pres-entation were carried on against them in the Surrogate's Court. A reference was then made to an auditor for the examination of the accounts, and the hearing and disposition of objections taken to them. The evidence of the two executors was taken before the auditor, and that has been made a portion of the foundation of the application on which the order was made, from which this appeal has been taken. By that evidence it appears that the executor, George F. Gilman, who is a son of the testator, allowed the affairs of the estate to be managed by the other executor, Edward McClellan. The funds and property of the estate were large, and substantially com-mitted to the custody and care of this executor, and accounts were kept with themselves in their joint names as individuals with the banks in which the moneys of the estate were deposited. McClellan

was engaged in business in the city of New York, and was not a person of sufficient responsibility to be intrusted with this large amount of property, in which other persons were entitled to share, as well as his own wife, under the will of the testator.    These facts indicate a persistent indisposition on the part of the two executors to comply with the directions of the law concerning their official conduct, and the manner in which the estate was allowed to be controlled and managed, indicated that there might be danger concerning its ultimate safety and preservation to the time when the court should direct its distribution among the persons entitled to receive it.    It was a measure of prudence, and no more than reasonable care, therefore, to require these executors to deposit the securities with the trust company, where they might surely remain in safety for the final benefit of the persons entitled to receive them.    It is not uncommon that losses are sustained by the estates of deceased persons by a course of conduct like that adopted by these two executors, and it was the duty of the surrogate to guard against the probability, as well as the possibility, of such loss.    And if more stringency was observed in this respect in the administration of the estates of deceased persons by the Surrogate's Court, less occasion would arise to complain of irrecoverable losses by persons deprived of the benefit designed to be secured to them by the disposition of the property of their parents, relatives and other friends.

The provision of the order, directing that the deposit should be for the security of the individual shares or interests of the petitioners, has been made the subject of special complaint, but evidently without reason, for this order in no manner placed these securities beyond the control and further direction of the surrogate.    It was not intended to be adjudged that the petitioners were to be exclusively benefited by these securities, but that their interests in the estate should be protected by this deposit, and the extent to which that protection would be necessary or would be afforded would depend upon the rights of the parties as they should afterwards appear to be upon an accounting and settlement of the estate and by the decree to be made by the surrogate.    They were still subject wholly to his control in this manner, and whatever justice may require to be directed concerning them, and whatever disposition the situation of the estate may indicate should be made, are still

subject entirely to the control and disposition of the surrogate. This part of the order, therefore, is not liable to the objection which has been made against it. Its primary purpose was the protection of the petitioners, but without directing or discriminating against the interests of either of the other persons in the estate, so far as to prevent their rights to be properly guarded and protected by whatever might afterwards be deemed to be proper for the disposition of the property. And this construction has, as a matter of fact, been followed and acted upon by the surrogate. The order was not only within the power of the surrogate, but its propriety was clearly indicated by the facts as they were made to appear, and it should be affirmed, together with ten dollars costs and also the disbursements, and the motion to dismiss the appeal should be denied, without costs.

BRADY, P. J., and MACOMBER, J., concurred.

Order affirmed, with ten dollars costs and disbursements, and motion to dismiss appeal denied, without costs.