### CLARK, Executor, &c. *vs.* CLARK.

The jurisdiction conferred upon the surrogate in whose office a will is proved, to call the executors to account for the proceeds of real estate, sold by them for the payment of debts and legacies under a power contained in the will, extends to wills made previous to the passing of the statute on this subject as well as to those executed subsequent to that time.

Where executors are obliged to foreclose a mortgage belonging to the estate of their testator, if the property will probably sell for a sum below its actual value, so as to endanger a collection of a part of the mortgage debt, it is their duty to bid in the property for the benefit of the estate and to take the conveyance to themselves as such executors, and to hold the premises until they can be sold for a fair price. And where the property remains in their hands unsold, at the time of accounting before the surrogate, he may direct a sale thereof, and a distribution of the proceeds of such sale as a part of the estate.

It is a violation of duty on the part of a guardian to permit his infant ward to live in idleness, and to support him out of his estate, when he is capable of supporting himself by his industry. And where the guardian permits him to be brought up in idleness, the infant will not be liable to the guardian for the support furnished him in the mean time. But the means of support furnished to an infant, by his guardian, while he is being educated and prepared for future usefulness, will be allowed to the guardian as necessaries.

To authorize an executor to retain for a debt due to himself from the estate

of the testator, he must, in addition to the usual proof of indebtedness, swear to the existence of the debt, in the ordinary form ; unless it is admitted by the adverse party.

Where an executor by his negligence suffers his co-executor to receive and waste the estate, when he has the means of preventing it by proper care, he is liable to the heirs and next of kin for the estate thus wasted.

The bequest of the use of the residue of the testator's personal estate, for the life of the legatee or for any shorter period, does not entitle such legatee to the possession of the fund. The executor should retain the fund in his own hands, and pay over the income thereof to the legatee during the continuance of his particular estate or interest therein. And if the executor suffers the capital to go into the hands of such legatee, to enable him to collect the income himself, he must take sufficient security from the legatee to insure the return of such capital ; or he will be liable for its loss.

1840.

Clark
v.
Clark.

THIS was an appeal from the sentence or decree of the surrogate of the county of Orange, upon the settlement of the account of the appellant as the surviving executor of his deceased brother, James Clark, who died in 1813. The decedent by his will appointed his wife and his brother the executrix and executor thereof, and authorized them to sell his real and personal property, with the exception of some few articles specifically bequeathed to his wife. And after paying his debts, he directed that the residue of his property should be divided into six shares ; of which he gave one share to each of his four eldest children, and two shares to the youngest. He also directed that his wife should have the care of his children entrusted to her, and should have the use of their property so long as she remained his widow ; the eldest child then being but thirteen years of age. The widow died in October, 1830, insolvent ; having on the 27th of March, 1829, received from the appellant the balance of the funds belonging to the estate in his hands, and given him a receipt in full. The stock and other personal property of the testator were sold by the executrix and executor after his death, for $425, as ascertained and settled by the surrogate ; and they also received from S. W. Brown $535, for a note with the interest thereon, which was due at the time of the testator's death. Both were present when the note was paid and taken up ; but whether the executor or the executrix actually received the money did not distinctly appear. They also

sold a part of the testator's land to F. Bell, for $600, for which they received payment. Another portion of the land was sold by them to N. Carpenter, for $2601; of which $1000 was paid, and a bond and mortgage was taken for the residue of the purchase money. That mortgage was subsequently foreclosed under the statute, and the property was bid in by their attorney, for the benefit of the estate, at $1400, and was subsequently conveyed to them as such executor and executrix. The costs of that foreclosure and sale, including proceedings to prevent waste upon the premises, amounted to $87,96; which sum was allowed to the appellant by the surrogate. Pending the proceedings before the surrogate, the appellant tendered to the respondent a conveyance of one sixth of the land thus bid in for the benefit of the estate, which was accepted by the latter, in full for any claim on account of the money secured by the bond and mortgage. The appellant insisted that the surrogate had no jurisdiction to call upon him to account for the proceeds of the real estate of the testator. And he also insisted that he was not answerable for any of the property which he paid over to, or suffered to go into the hands of his co-executrix; as by the terms of the will she was to have the use of the property during her widowhood. The appellant also claimed a debt of $700 as due to himself from the testator, for monies raised for him to enable him to purchase a farm about seven years before his death, which claim was disallowed by the surrogate, as barred by the statute of limitations if not actually paid to him by the decedent. It also was proved that the respondent, who was about eight years old at the death of his father, went to reside with the appellant immediately thereafter, and continued in his family, and was sent to school by him as one of his own children six or eight years; for which the appellant claimed compensation. But no evidence was produced as to the terms upon which he went there to reside, or whether the value of his services during the time he resided there were or were not sufficient to compensate the appellant for his support; and the surro-

gate allowed nothing on account of that claim. The balance which the surrogate found due to the appellant, after charging him with the proceeds of the personal estate and the two sums actually received from the proceeds of the real estate, and deducting therefrom the several payments made either by him or by the executrix to the creditors of the decedent, and the expenses of administration, amounted to $1358,94. For one sixth of this sum together with the interest thereon from the death of the widow, a decree was made against the appellant, in favor of the respondent, together with the costs of the proceeding before the surrogate; the other heirs having settled with the executor for their portions of the estate. From that decree, and every part thereof, V. Clark, the executor, appealed.

*S. Jackson & I. R. Van Duzer*, for the appellant. The surrogate had no jurisdiction over the proceeds of the real estate, and certainly no power to decree in relation to the trusts created by the sale and purchase of property under the Carpenter mortgage. (2 *R. S.* 94, § 65, 66.) Consent, even, could not confer such jurisdiction. The payment in full of the trust funds to Mary Clark, executrix, was, under the provisions of the will, an exoneration of Vinson Clark from responsibility. It was especially so, so far as it related to the personal property. The evidence of the money advanced by the defendant to the testator, was sufficient to sustain the allowance; and the admission of Mary Clark was competent to remove the objection of the statute of limitations, even if it was applicable. The surrogate should have allowed the defendant compensation for keeping, clothing and schooling the complainant. And he erred in charging the defendant with the proceeds of the Brown obligation and of the stock on the farm. The fifty-seventh section of the statute, (2 *R. S.* 109,) does not apply. The provisions therein contained were first passed in 1822. The phraseology is prospective, and applied only to wills thereafter to be made. (*Id.* 94, § 65, 66.) The implied promise to pay, arises in law and equity from an

admission of the indebtedness by the executrix. The appointment of the creditor an executor, would be sufficient to obviate the objection of the statute, where the indebtedness is satisfactorily established. Every presumption should be allowed in favor of the defendant on account of the hardness of the case. The evidence produced before the surrogate certainly entitled the defendant to an allowance for the board, education, &c, of the respondent.

*A. Dimick & S. J. Wilkin,* for respondent. The surrogate had jurisdiction over the proceedings in relation to the real estate. The real estate was sold under the authority of the will, and the executors were bound to account under the 57th section. (2 *R. S.* 110. *Kellet's Ex'rs* v. *Rathbun,* 4 *Paige's Rep.* 102.) The purchase by the executors at the mortgage sale, was so far in trust for the infant legatees and heirs, that they might elect to take either the land or the consideration.

The appellant is not discharged by his payment to his co-executor—she not being guardian of the property of the respondent. Guardian by nature is only entitled to the custody of the person. (2 *Kent's Comm.* 219. 1 *John. Ch. Rep.* 3.) The right of a guardian in socage, extends only to the lands which the infant acquires by descent. (2 *Kent's Comm.* 222.) The funds were all in the hands of the appellant, and he was not justified in paying over the principal to his co-executor as such. Where, by any act done by one executor, any part of the estate comes to the hands of his co-executor, the former will be answerable, (*Toller's Law of Ex'rs,* 375. *Southerland* v. *Brush,* 7 *John. Ch. Rep.* 22. 6 *id.* 452.) And more especially in this case, as the executrix, Mrs. Clark, was in very reduced circumstances, and died insolvent.

There was no sufficient evidence of the indebtedness of the testator to the appellant, and if there were, it was barred by the statute of limitations. An executor cannot retain a debt barred by the statute. (*Rogers* v. *Rogers,* 3 *Wendell,* 503.) From the vagueness of the testimony

offered by the appellant, the surrogate was not at liberty to make him any allowance for maintaining the respondent.

THE CHANCELLOR. The objection that the surrogate had no jurisdiction to call the executor to account for the proceeds of the real estate, was not well taken. The act of the 17th of April, 1822, expressly authorized the surrogate in whose office the will was proved, to call the executors to account for the proceeds of the real estate which had been sold by them for the payment of debts or legacies by virtue of a power contained in such will. (*Laws of* 1822, *p.* 283.) And the same provision, in substance, was incorporated into the revised statutes. (2 *R. S.* 110, § 57.) The language of the legislature in both statutes is general; and no good reason can be suggested why it should apply only to wills made after the passing of the original act, and to subsequent sales. It was perfectly competent for the legislature to authorize a proceeding in the surrogate's court to compel the executor to account for the proceeds of sales theretofore made. And where there is nothing in the language of the act indicating an intention to confine the remedy to subsequent sales, it is not the duty of the court to give such a restricted interpretation to a remedial statute.

As the claim in relation to the land bid in for the executor and executrix, upon the statute foreclosure, was adjusted between the parties upon the hearing before the surrogate, it is too late to urge the objection here that the surrogate had not the power to do justice between the parties; and that a court of equity alone could give the adequate relief. I cannot, however, see any difficulty in relation to the power of the surrogate as to that matter. This was not a case in which a trustee to sell had himself become the purchaser, through the medium of a third person, for his own benefit, in violation of his duty. On the contrary, it was the duty of the executor and executrix, as faithful trustees, if the premises mortgaged to them were likely to

sell far below their value, to the injury of the estate of the decedent, to bid the same in and take a conveyance to themselves, in their character of executor and executrix; to hold for the benefit of the estate, in the same manner as they held the original mortgage, until they could be sold for a fair price. And in accounting before the surrogate, while the property still remained in their hands unsold, he would be fully authorized to direct a sale thereof and a distribution of the proceeds as a part of the estate which had come to their hands in their fiduciary character; if those who were interested in the estate preferred their share of the proceeds instead of their share of the land itself.

The will did not constitute the widow the testamentary guardian of the property of the children, but the guardian of their persons merely. And the use of their property, that is the income of it, was evidently intended to be given to her during her widowhood, for their as well as her support, so long as they were not in a situation to maintain themselves. If the appellant, therefore, chose to take his nephew into his own family, instead of permitting him to remain with the widow, and to receive his support out of the income of the estate in common with the other children, there is no good reason why that expense should be charged against his share of the capital of the estate to which he became entitled upon the death of his mother. And if either the mother or the uncle suffered him to remain in idleness after he was old enough to earn his own living, they have no equitable claim against him for having furnished him with what could not, under such circumstances, be considered as necessaries; as it would have been a palpable breach of duty for the guardian of the respondent to have suffered him to live in idleness, when he was able to earn his own support, unless he was preparing himself for future usefulness by obtaining an education. I cannot, in the absence of all evidence on the subject, presume he did not earn his living during the time he remained with her. The surrogate was therefore right in not making any allowance against the cap-

ital of the estate for his support, either by his uncle or his mother.

There is no foundation whatever for the claim for the $700, supposed to be due from the testator to the appellant, at the time of his death. The declarations of the widow were not evidence, even if she had admitted the existence of this pretended debt, as it was barred by the statute of limitations before the death of her husband. She said nothing, however, which, if it had been said by the testator himself, would have amounted to an acknowledgment of an existing indebtedness. She told her children, what was undoubtedly true, that several years before, when their father was poor, his brother had been very kind to him in raising money to enable him to purchase and pay for his farm. But there was not even an intimation that the debt remained unpaid at the death of her husband. What, however, is conclusive to my mind, that this claim is wholly fictitious is, that the appellant did not venture to make it in the sworn answer which he put in before the surrogate, when he was first cited to account. To authorize an executor to retain for a debt due to himself from the estate of the testator, he must, himself, in addition to the usual proof, swear to the existence of the indebtedness after allowing all payments and offsets, in the ordinary form; if the existence of the debt is not admitted by the adverse party. (*See Williams v. Purdy, 6 Paige's Rep. 166.*)

The only remaining question is, whether the appellant was liable for the money which he has paid over to his co-executrix. Although it does not distinctly appear who received the money which was paid by Brown on his note, in May, 1813, I think very little doubt can exist that nearly the whole of it was applied to pay the first instalment on the mortgage to Curtis, which was paid on the 3d of May, in the same year, and which payment is credited to the appellant in his account. It will be seen that the money was received from Brown and the payment made to Curtis, a very short time after the death of the testator, and some months before probate of his will had been granted.

It is hardly probable, therefore, that either the executor or executrix had at that time obtained the means from any other source to pay so large a debt ; and it is not alleged that either advanced money from their own funds for that purpose.   Again ; if the whole of the proceeds of the personal estate went into the hands of the executrix originally, he should have insisted upon her paying the debts out of those funds ; instead of suffering her to use them for her own purposes and selling the last parcel of the real estate, when the proceeds of the personal property together with the $600 raised on the first sale, were more than sufficient to pay all the testator owed.   The appellant, therefore, is unquestionably chargeable with the default of his co-executrix, upon the settled principles of law, unless by the terms of the will she was entitled to the possession of the whole fund during her widowhood ; as he paid over to her, in principal and interest, more than the whole balance with which he is charged by the surrogate, after the sale of the last parcel of the real estate.

I think this case comes clearly within the principle of law recognized by this court in *Covenhoven* v. *Shuler*, (2 *Paige's Rep.* 122,) that the bequest of the use of a residue for life or any shorter period does not give the legatee the right to the possession of the fund in the meantime ; and that the executor should either retain the fund and pay over the income thereof to the legatee, as it accrues; or he should take ample security for the return of the principal at the termination of the particular estate therein, if he suffers it to go into the hands of the legatee to enable her to enjoy the use or income thereof.   There is very little doubt in this case that the appellant paid over the whole of the fund to the widow in good faith, believing that she would so use it for the benefit of her children as to exonerate him from liability.   Under those circumstances, it is to be regretted that the respondent should not have adopted the course which his brothers and sisters pursued, instead of bringing disgrace on the memory of his mother, and attempting to render his uncle liable, by showing that

she had misapplied or squandered the property which had been entrusted to her for the use of her children. I cannot say, however, that the surrogate erred in the result at which he arrived in this case ; as his decision appears to have been in accordance with the settled principles of law on this subject. His sentence or decree must, therefore, be affirmed with costs.

As it appears by an affidavit which has been sent to me, that the appellant died in June last, the decree of affirmance must be entered nunc pro tunc, as of the first of June, 1839. And the proceedings must remain in this court; with liberty to the respondent to apply to revive the same here, if the debt and costs are not paid without further litigation.