# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY.

### OCTOBER TERM, 1874.

PARKER'S EXECUTORS *vs.* MOORE and others.

1. A bequest of a sum of money generally, without distinguishing it from testator's other moneys, or mentioning out of what fund it is to be paid, is a general legacy. A designation of such bequest in the residuary clause as a "specific" legacy, will not change its character as general, where the term is evidently used by the testator with reference to the fact that it was a legacy of a specified sum of money.

2. Though, as a general rule, the gift of the interest of a fund, standing by itself, is a gift of the corpus, yet, if from the context of the will it appears that the interest only was intended for the legatee, the gift of the interest will not pass the principal.

3. A gift of $50,000 to A, "the interest thereof to be paid to her during life," and the principal to her children at her decease, does not pass the corpus of the fund to A.

4. As between the tenant for life and the remainderman, the rule, at least as to funds that are not permanent, is, that what is not specifically given is to be converted into money, if the property and the parties are not abroad. In this case, the testator has directed the conversion.

5. Where there is a bequest of the income of a sum of money to one for life, and then the principal to another, without any trustee being named in the will other than the executor, he will be held to be trustee.

6. In this case, the court refused to appoint a married woman trustee of funds of which she was entitled to the interest for life, upon considerations of marital influence, domicil, and near relationship to the remaindermen.

7. When trustees are discharged from their trust under the will, several trustees will be appointed to take charge of different portions of the estate, if for any reason it is necessary or desirable.

Isaac Brown Parker, late of Burlington, in this state, made his last will and testament, dated August 18th, 1865, as follows :

" I, Isaac Brown Parker, of Burlington, New Jersey, being now in reasonably good health, and of sound mind and memory, for which I desire to express my thankfulness to the Giver of all good, do make this my last will and testament.

" *First.* I direct that all my just debts and funeral expenses be paid, and that the place of my interment be suitably marked, at the discretion of my executors.

" *Second.* It is my special desire to provide amply for the comfort and happiness of my dear wife, that, during the residue of her life, her residence may be where that comfort and happiness shall be most certainly promoted ; and I therefore, direct my executors hereinafter named, to invest safely, a sum which will produce an annual interest of five thousand dollars, ($5000,) which shall be paid to her semi-annually ; at the decease of my dear wife, this investment to fall into the residue of my estate. I bequeath to her also, any part of my household plate, furniture or effects, which she may choose.

" *Third.* With the devises which I purpose hereinafter to make to my daughter, Mary, and the securities for the indebtedness of her husband, Johnston Moore, which are hereby cancelled, she shall be considered as having been advanced sixty thousand dollars, ($60,000.) In addition thereto, I bequeath to her the sum of fifty thousand dollars, ($50,000,) the interest of which shall be paid to her during her life, and the principal to her children at her decease. And I do hereby devise to my said daughter, Mary, the farm in and adjoining Carlisle, including all the lots which have been used and occupied as a part of it by her husband, and which contains about one hundred acres, be the same more or less ; also, the farm in Dickenson township, which I purchased from the

executors of Samuel Bertern, and which contains about one hundred and eight acres, and which is now in the tenure of her husband; to have and to hold these same farms to my said daughter, for and during her life, with remainder in fee to her children.

"*Fourth.* I have advanced to my daughter, Euphemia, which includes all the indebtedness of her husband, Edward B. Grubb, to me, thirty-six thousand dollars, ($36,000.) In addition thereto, I bequeath to her fifty thousand dollars, ($50,000,) the interest of which shall be paid to her during life, and the principal to her children at her decease.

"*Fifth.* I have advanced to my son, John Brown Parker, twenty-five thousand dollars, ($25,000.) In addition thereto, I bequeath to him the sum of sixty thousand dollars, ($60,000.) And this shall be considered a settlement of all accounts between him and me.

"*Sixth.* I have advanced to my son, William B. Parker, in his lifetime, a sum not exceeding one hundred thousand dollars. In addition thereto, I bequeath to each of his children, Henry, Maria, William and Stephen, the sum of twenty thousand dollars ($20,000,) each, to be paid to them as they severally arrive at full age.

"*Seventh.* I devise to my executors, hereinafter named, the farm in Burlington county, New Jersey, containing about one hundred and twenty-six acres, where my son, George W. Parker, now resides, and all the stock and farming utensils there, in trust, that they will have the same so managed, rented or conducted, as that they shall receive the rents, issues and profits thereof, and appropriate the same in such sums and at such times as will best comport with the necessities and comfort of my said son, George W. Parker; and if this should not be sufficient for his support and maintenance, I direct my executors to appropriate out of my estate, the further sum of five hundred dollars annually, for that purpose. And I bequeath to his daughter, Mary, the sum of fifteen thousand dollars, to be paid to her when she comes of age. And I devise to his said daughter, Mary, the farm in Burlington

county, which I have hereinbefore appropriated for the support of her father, in fee simple, to take effect at the decease of her father.

"*Eighth.* I have advanced to my daughter, Emeline Johnston, fifty thousand dollars, ($50,000.) In addition thereto, I bequeath to her the sum of fifty thousand dollars, ($50,000,) the interest of which to be paid to her during her life, and the principal to her children at her decease.

"*Ninth.* I bequeath to my executors, hereinafter named, the sum of fifty thousand dollars, ($50,000,) in trust, that they will invest the same, and pay the interest thereof, annually, to my son, Thomas B. Parker, during his life, and the principal to his children, at his decease, if he should then have any. If he have none, this bequest shall lapse into the residue of my estate, upon his decease; and I do hereby commit to the discretion of my said executors, the power and authority to advance any part of the principal to him, under circumstances in which they shall deem it proper to do so.

"*Tenth.* I have advanced to my daughter, Marcia R. Freeman, the sum of forty thousand dollars ($40,000.) In addition thereto, I bequeath to her the sum of fifty thousand dollars, the interest of which shall be paid to her during her life, and the principal to her children at her decease.

"*Eleventh.* I have advanced to my daughter, Virginia Marie, the sum of fifty thousand dollars ($50,000.) In addition thereto, I bequeath to her fifty thousand dollars, ($50,000,) the interest whereof shall be paid to her during her life, and the principal to her children at her decease.

"*Twelfth.* I devise to my grandson, Parker I. Moore, the farm on which he now resides, in Penn township, Cumberland county, Penna., containing two hundred and forty acres, and to his heirs. And I charge the same with the payment of $10,000, one-half the value thereof, to be paid to his mother, my daughter, Mary.

"*Thirteenth.* To enable my executors to fully settle my estate and make the necessary investments, I give them full power and authority to sell, convey, and dispose of all, or any

part of my real estate in Pennsylvania or New Jersey; and if any of my legatees should desire to take any part of the same, they may do so at a valuation, to be made by three judicious men, to be appointed by my executors. And I empower my executors at any time, and at all times, to invest, or re-invest all such sums of money, as the exigencies of my estate shall require or render necessary.

"*Fourteenth.* As to all the rest and residue of my estate, real and personal, I desire that it shall be equally divided between my children, Mary Moore, Euphemia Grubb, John Brown Parker, Marcia Freeman, Thomas B. Parker, Virginia Marie, and Emeline Johnston, charging each of them with the advancements, as I have hereinbefore set them forth, as having been made by me to each of them. It being expressly to be understood, that the residuary bequests to my said children, Mary, Euphemia, Emeline, Thomas B., Marcia, and Virginia, are to them for life, remainder to their children after their death; and with the same conditions, trusts, and limitations, as are coupled with the specific legacies to each of them; and in this calculation, I allow to my daughter, Mary, $2000, for the education of her daughter, and improvements on the Bertern farm; and if any of my said grandchildren should die intestate and without issue, before their mother, the share of such shall go to their surviving brothers and sisters, if they leave any; and if all said children be dead, at the death of the parent to whom the interest is payable, then the said legacy or legacies shall lapse into the residue of my estate.

"*Sixteenth.* I do hereby appoint my son, John Brown Parker, and Frederic Watts, Esq., of Carlisle, Pennsylvania, to be the executors of this, my last will and testament, giving them all the powers and authority to sell and convey my real estate, as hereinbefore provided; and I set apart, and direct that they retain the sum of $8000 as compensation to them as my executors; and it is my will that it be not required of them to give security for the execution of the will, and as it will be necessary that the same be registered, both in New

Jersey and Pennsylvania, I do not desire that security be required of them in either place, by the surrogate or register."

The testator died on or about September 19th, 1865. Both executors proved the will. On the 28th of May, 1872, they filed their bill, praying that an account might be taken, under the direction of this court, of the trust estates, and that, on paying over the interest and dividends due on the trusts, and the assets of which the estate is composed, they might be discharged from their trust, Mr. John Brown Parker on account of ill health, and Mr. Watts on the ground that the engrossing duties of the public office which he holds—that of Commissioner of Agriculture of the United States—will not permit him to give any attention to the trust.

The answers consent to the relief prayed.

*Mr. B. Gummere,* for complainants.

*Mr. C. Parker,* for Mrs. Freeman.

*Mr. J. Wilson,* for Mrs. Grubb and Mrs. Moore.

THE CHANCELLOR.

The question presented for consideration is, whether the testator's daughters are entitled to possession of the corpus of the funds from which the interest bequeathed to them is to be derived, especially as to the legacies of specific sums of money. It is urged, that although, perhaps, a distinction may be made between the legacies given in the residuary section and those of specified sums, yet they are all specific. These legacies are not specific, but are all of them general. Those given by the sections other than the residuary, are legacies of specific sums of money, but they are general legacies, nevertheless. *Roper on Legacies* 202 ; *Sparrow* v. *Josselyn,* 16 *Beav.* 135. The testator evidently, in his designation of them in the residuary section as " specific " legacies, used the term with reference to the fact that they were legacies of specified sums of money. Such a reference will not give them

any other character than that which would otherwise have been given to them by the established rules of construction. The legacies given out of the residuum, are also general, and not specific. *Roper on Legacies* 242.

It is insisted on behalf of the daughters, that they are entitled to the funds from which the interest given to them is to be derived, subject only to the necessity of giving security to the persons in remainder, in case real ground of apprehension of waste of the corpus is shown to exist. To maintain this position, they rely on the language of the bequests. It appears to me, however, that the terms of those bequests lead to the contrary conclusion. The bequests of specific sums under consideration, are, it will have been observed, in substantially the same language. In the case of Mrs. Freeman, after stating the amount of advances made to the legatee, the testator says: "In addition thereto, I bequeath to her the sum of $50,000, the interest of which shall be paid to her during her life, and the principal to her children at her decease." In the residuary section he says: "As to all the rest and residue of my estate, real and personal, I desire that it shall be equally divided between my children, Mary Moore, Euphemia Grubb, John Brown Parker, Marcia Freeman, Thomas B. Parker, Virginia, Marie, and Emeline Johnston, charging each of them with the advancements I have hereinbefore set forth as having been made by me to them; it being expressly to be understood that these residuary bequests to my said children, Mary, Euphemia, Emeline Thomas B., Marcia, and Virginia, are to them for life, remainder to their children, after their death, and with the same conditions, trusts, and limitations as are coupled with the specific legacies to each of them; and in this calculation I allow to my daughter Mary, $2000 for education of her daughter, and improvements on the Bertern farm; and if any of my said grandchildren should die intestate, and without issue, before their mother, the share of such shall go to their surviving brothers and sisters, if they leave any, and if al the said children be dead at the death of the parent to whom.

the interest is payable, then the said legacy or legacies shall lapse into the residue of my estate." From the circumstance that these specific sums and the shares in the residuum are, by the terms of the will, given directly to those who are to have only the interest of them, it is argued that the testator intended that they should have possession of the funds, and that the words "to be paid" are, in this connection, equivalent to the words " to go to," or " to be received by." But the language of the tenth section, " the interest of which shall be paid to her during her life, and the principal to her children at her decease," provides for payment in both cases, as well to Mrs. Freeman during her life, as to her children at her death. The language of the other bequests of specific sums is, as before remarked, substantially the same. The testator gives to his son, Thomas B., a share of the residue by the same terms, and together with his other son and his daughters named in the residuary section. As to Thomas, by the ninth section, he makes the executors trustees of the $50,000 given for his benefit in that section, bequeathing that money to them in trust for him. He, undoubtedly, did not mean that the share of Thomas in the residuum, notwithstanding the gift is to him, should indeed go to or be received by him, but manifestly, that it should, as he expressly says it shall, be held on the same "conditions, trusts, and limitations" as the $50,000 mentioned in the ninth section. That the testator used the word *paid* in the sections in which the legacies of specific sums are given to his daughters, intelligently, and with an appreciation of its exact signification, appears from the language employed in the residuary section. He there says that if any of the children of the residuary legatees be dead at the death of the parent to whom " the interest is payable," &c. He had made no mention of the interest on the shares of the residuary legatees; he had merely said that those residuary legatees were to be to his children there named, for life, with remainder to their children after their death ; and " with the same conditions, trusts and limitations as are coupled with " the legacies of specific sums. The gift.

of the interest of a sum of money does not pass the whole fund itself, if there are words used to confine it to a life estate. *Clough* v. *Wynne*, 2 *Madd.* 188, 439 ; *Roper on Legacies* 1476. Says Roper, p. 1478 : " But, notwithstanding, as a general rule, the gift of interest and dividends standing by itself, is a gift of the corpus, yet, if, from the nature of the subject, or the context of the will, it appear that the produce or interest of the fund only was intended for the legatee, the gift of the interest will not pass the principal." Under this will these legatees to whom the interest is given for life, cannot claim the possession of the fund on the ground that the gift of the interest passes the principal. The construction put upon the sections under consideration by the Supreme Court of Pennsylvania, in *Parker's Appeal*, 61 *Penn.* 478, so far as it rests on the existence of the general rule above alluded to, cannot be maintained, for that rule is not applicable to these legacies. This case differs from *Rowe's Ex'rs* v. *White*, 1 *C. E. Green* 411, for there a legacy was given to the legatee, with a limitation over on a definite failure of issue. The ruling of this court in *Jones' Ex'rs* v. *Stites*, 4 *C. E. Green* 324, has been misapprehended in applying it to this case. It is insisted that the language of the court there, " when specific chattels or a specific sum of money are given for life, or absolutely, subject to a limitation upon the happening of a certain contingency, the chattels must be delivered, or the money paid to the legatee, and at his death, or upon the contingency, will go to the legatee in remainder," applied to this case, would give to the daughters the possession of the specified sums bequeathed by the will under consideration. But here, the specified sum is not given for life, but the interest of it only.

It is urged that the fact, that by the thirteenth section of the will it is provided that if any of the legatees should desire to take any part of the testator's real estate, in Pennsylvania or New Jersey, they may do so, at a valuation to be made by three judicious men to be appointed by the executors, is indicative of the testator's intention in reference to the

bequests, and shows that he intended that his daughters should possess the principal. This provision applies to all the legacies, and as applied to either those of specific sums or those given by the residuary section, it in no wise militates against the construction which I put upon the bequests. The persons who were to receive the interest of these legacies, might well be permitted, in the conversion of the estate, to select portions of the real estate, at a just valuation, to be held as investments of part of the corpus of the fund, and I think that was what the testator intended by the provision.

Again, it is urged that the fact, that the testator bequeathed only $8000 to his executors, is evidence that he did not intend that they should be charged with the trust with which, by this construction, they would have been charged ; a trust, embracing very large sums of money and continuing probably for a very long period of time. The indication of the testator's intention to be drawn from this fact, would be slight at best, for he may have considered the compensation sufficient for all the service, which by this construction, might have been required of the executors. It will be observed, that he gives them $8000, as compensation to them *as his executors*, and it may be that he considered, as he properly might, that their duties as executors, would terminate when their duty as trustees began, and that for their services as trustees, they would be entitled to pay out of the trust funds in their hands. It is clear that he did, in fact, contemplate that his executors would continue in charge of a portion of his estate, at least, for a considerable period of time, for he makes them trustees of his sons, George and Thomas, for the respective lives of those sons. He makes no further provision, however, for their compensation.

The provision in the thirteenth section of the will, empowering his executors " at any time and at all times, to invest or re-invest all such sums of money as the exigencies of" his " estate," (not the part of it only which he had placed in their hands as trustees for George and Thomas,) should " require or render necessary," is not without significance.

The power to vary securities, pre-supposes that the estate has been converted and invested. How could the testator have intended that his daughters should possess and control the respective legacies of which he gave them the interest, when he gave to the executors unlimited power to vary the securities in which his estate might be invested, at their discretion, according to the exigencies of the estate? The possession, control and management of the corpus of the legacies, are inconsistent with the power given to the executors to vary securities at their discretion. *Morgan* v. *Morgan*, 14 *Beav.* 72. This power, it will be observed, is in addition to the power given in the same section, to sell his real estate in this state and Pennsylvania, to enable the executors to fully settle the estate and make the necessary investments. The testator contemplated that his executors, after settling his estate, would invest it, and I have no doubt, that the necessary investments here mentioned, are the investments of the whole estate. The daughters of the testator are not entitled to possession either of the specific sums. or of the shares of the residuum. *Jones' Ex'rs* v. *Stites, supra ; Covenhoven* v. *Shuler,* 2 *Paige* 122 ; *Clark* v. *Clark,* 8 *Paige* 152. The duty of the court, in reference to these legacies, as well those of specified sums as those given by the residuary section, is, to see to it that all parties in interest are protected. As between the tenant for life and the remainderman, the rule, at least as to funds that are not permanent, is, that what is not specifically given, is to be converted into money, if the property and the parties are not abroad. *Ward on Legacies* 304; *Holland* v. *Hughes,* 16 *Ves.* 111 ; *Howe* v. *Earl of Dartmouth,* 7 *Ves.* 137. In this case, the testator has himself directed the conversion, by the thirteenth section of the will. The executors would be held, under the will, to be trustees of the legacies. *Jones' Ex'rs* v. *Stites.* In Parker's Appeal, the court said, in reference to the very matter now under consideration : " Several English cases have been cited, and among them *Bush* v. *Allen,* 5 *Mod.* 63, and *South* v. *Allen, Id.* 101, in which trusts to executors are implied from provisions very

similar to the case in hand, and it is not improbable that we might feel ourselves impelled to imply such a trust in this and cases like it, were it not that the legatees for life are placed on the footing of trustees for those in remainder, in regard to the thing or the principal of the fund devised for life, by the forty-fourth section of the act of the 24th of February, 1834. That act requires legatees to give security in the Orphans Court having jurisdiction of the account of the executors, to protect the interest of those in remainder, before the executors shall deliver the property or pay over the money to the legatees for life; which security, like that of trustees by appointment, is liable to the supervision of the Orphans Court at all times."

In *Giddings* v. *Seward*, 16 *N. Y.* 365, there was a bequest to the testator's mother of "the sum of $1200 and interest on the same, contained in a certain bond and mortgage" described in the will, with a subsequent provision, importing that the money was given to the mother for life, with a limitation over. It was held that the legacy was not a specific, but a demonstrative legacy, giving the income of the $1200 for the life of the mother. The executor had delivered the bond and mortgage over to the mother, and it appeared that she subsequently executed a satisfaction piece of the mortgage. The court said: "It was never the intention of the testatrix, therefore, to give to her mother the principal of the sum bequeathed, but the income only, during her life. The executor and ultimate legatee became, by the provisions of the will, a trustee of the fund during the life of the first legatee. The latter, therefore, could have no right to collect the principal sum secured by the bond and mortgage, nor any power or control over it, except so far as she was invested with such control by the voluntary act of the executor. But as the interest of the fund would, when paid, belong exclusively to the legatee for life, the executor, by delivering the bond and mortgage to her, must be regarded as having authorized her to receive such interest as the same should become due. No such inference, however, can be

drawn as to the principal, which was not due, and which, in no event, would belong to the legatee for life. The mortgagor, therefore, had a right to pay the legatee for life, the interest upon the mortgage from time to time, as the same should become due, and to that extent the receipt would discharge him. Hence, although the acknowledgment of satisfaction, by the legatee for life, was entirely nugatory as to the principal of the mortgage, it nevertheless affords sufficient evidence of the payment of interest up to that time."

In *Dorr* v. *Wainwright*, 13 *Pick.* 328, 331, the court said :. "Such being the nature of the gift, it falls within a rule now well settled, that a gift of a fund or a sum of money to one for life with remainder over, is a gift of the interest or income only to the first taker, and the fund itself is not to be paid to the legatee for life, but to be in the hands of a trustee. We also consider it to be now settled by a series of decisions in this commonwealth, that when a testator by his will, either in express terms or by legal implication, has given the income of a sum of money to one for life, and then the principal to another, and has not in terms placed it in trust with any trustee, other than the executor, it is the province and duty of the executor as such, to hold and invest the fund in some secure and productive stock, or at interest on good security, and to pay over the income, from time to time, within reasonable times, to the legatee for life, and at the decease of the legatee for life, to pay out the principal to the person then, by the will, entitled to it."

It is incumbent on the court to appoint a trustee or trustees in the premises. It is suggested that each of the daughters be appointed trustee of the money of which she is entitled to the interest. But the objections to this course are numerous. The court is not inclined to appoint a married woman trustee in such a case as this, because of the control which her husband will be likely to exercise over her in making or changing investments. Besides, these ladies are all domiciled out of this state. These considerations, added to the fact of their near relationship to the persons in remainder, lead me to seek

other persons as trustees. *Lewin on Trusts* 35, 40, 210, 574, 710; *Hill on Trustees*, 188; *Wilding* v. *Bolder*, 21 *Beav.* 222. The difficulty of obtaining a trustee or trustees who can give proper security for the whole of an estate so large as this, will probably make it necessary, and indeed, on some accounts, it will, perhaps, be desirable, that several trustees should be appointed to take charge of different portions of the estate. If so, that course will be adopted.