## Estate of THOMAS H. BLYTHE, Deceased.

[No. 2401; decided November 24, 1886.]

Administrator—Right to Expend Money on Foreign Lands.— A demurrer to the "Petition of administrator for leave to expend $10,000, or such other sum as may be sufficient, to preserve the Mexican lands from forfeiture under the conditions of the grants," was sustained on the ground that the order prayed for was beyond the jurisdiction of the court to make.

Administrator—Right to Expend Money on Foreign Lands.—A previous ruling of the court, authorizing an administrator to deal with lands situated in a foreign jurisdiction, does not justify an adherence to such ruling if, upon a new application, the true character of the issue, as a jurisdictional one, is exposed.

Administrator—Right to Deal with Foreign Lands.—An administrator has no legal right to deal with lands situated in a foreign country as if they were within the local jurisdiction.

Administrator—Authority Over Foreign Lands.—A California administrator has no power officially in Mexico over lands there; and the facts in this case show that neither personally nor by virtue of his office can he claim or take title to lands there.

Administrator—Responsibility for Foreign Assets.—While an administrator must include in his inventory all estate of his decedent coming to his possession or knowledge, it does not follow that he is bound to account for assets situate in a foreign jurisdiction.

Administrator—Authority in Foreign Country.—A California court cannot endow its appointee with any official character as administrator beyond the borders of the state, and when he appears elsewhere, he is simply a citizen abroad without any representative faculty whatever.

Administrator—Authority Beyond Territory of Appointment.— Where an administrator has no power beyond the territory of his appointment, he can have no duty with respect to any matter extraterritorium.

Administration.—Under the Mexican Jurisprudence there are no administrations with respect to the successions of decedents.

Administration.—An Executory Contract is not Itself an Asset; it is the subject matter of the contract that is. This principle applies to an executory contract with respect to foreign realty, which is not a local asset for administration purposes.

Probate Court—Chancery Jurisdiction.—The superior court, sitting in probate, has no chancery side.

Probate Court—Limited Jurisdiction.—The superior court, sitting in probate, deals only with administrations, and cannot assume jurisdiction, except the object upon which it is to operate is before it.

**Administrator—Liability in Dealing with Foreign Lands.**—As there is no obligation upon an administrator to go into a foreign country and deal with lands there, consequently no liability can be claimed on his part to have attached to him officially by reason of his having done so.

**Inventory—Assets in Foreign Jurisdiction.**—Code of Civil Procedure, section 1443, with respect to the inventory of decedents' estates, does not enlarge the well-settled liability of administrators. That section relates only to estates actually or in legal contemplation within this state.

The subject matter of this opinion concerned property in Mexico, which the administrator and his attorney believed to be of great value. The property consisted of lands lying on the Colorado river, and as partly then appeared in evidence, and was subsequently during the administration more fully developed as a fact, an unlimited amount of money might be required to reclaim said lands; and a competent engineer, who had in Blythe's lifetime professionally visited the property, on Blythe's retainer, testified that had Blythe lived long enough he would, in all likelihood, have dissipated his valuable estate in San Francisco in his efforts to improve and protect these Mexican possessions.

John A. Wright, for Public Administrator Roach.

Edward R. Taylor (attorney appointed by the court for unknown heirs), for demurrants.

W. W. Cope, for Andrade, an associate of Blythe in his lifetime in the Mexican enterprises.

R. B. Wallace, also for Andrade.

John M. Burnett, for Wm. Savage, claiming to be an heir.

COFFEY, J. This is a demurrer to an application entitled "Petition of administrator for leave to expend $10,000, or such other sum as may be sufficient to preserve the Mexican lands from forfeiture under the conditions of the grants." A similar petition (except that the amount asked for was not specific) was filed September 6, 1886, and

a demurrer thereto overruled October 22, 1886; but the court denied the application, deeming it inexpedient to proceed further with the Mexican project. The administrator having revived his petition upon the assumption that the court might favorably regard a limited application, it becomes necessary again to inquire into the legal merit of the question.

The main ground of the demurrer is, that "the order prayed for is without and beyond the jurisdiction of the court to make."

### ALLEGATIONS OF PETITION.

The petition sets forth that the administrator had already expended certain moneys of the estate "for the purpose of maintaining possession of and title to certain lands situate in the Republic of Mexico," the grants or titles to which lands stood in the name of one Guillermo Andrade; but that "the said Andrade had expressly acknowledged and declared that the same were held by him merely in trust for the sole use and benefit of the said Thos. H. Blythe, and as his property," except certain undivided parts thereof, to which the said Andrade claimed to be entitled, as compensation for his services in and about the acquisition of said lands; that the decedent Blythe, for many years prior to and at the time of his death, was in the sole and undisputed possession of said lands, under the said grants and titles; and that the applicant, as administrator of the estate of Blythe, has, since his death, maintained and now holds possession of said lands; that the said grants and titles under which the said lands were acquired and held were upon the condition that said lands must be colonized to the extent of placing thereon two hundred families of settlers, fifty of which must be established before January 1, 1887, or the grants will become forfeited,—and to avert this forfeiture by placing the remainder of the fifty families (ten more) the administrator asks for leave to expend $10,000 out of the assets of the estate.

### PROCEEDINGS UPON FIRST PETITION.

The petitioner supports his application by reference to the orders of the court, pursuant to which he claims to have expended large sums of money in maintaining title to and

possession of these Mexican lands, and which orders, he claims, established the principle which should govern the court in considering this application. "Two judges (Coffey and Rearden) have separately considered the question involved in and the expenses of the care of the Mexican assets," says the counsel for the administrator (page 30, printed Points and Authorities, before referee), implying that this court, by its action heretofore, is committed now against the position of the demurrer. If the court, in the person of either or both of the judges named, erred in authorizing the administrator to deal with lands situate in a foreign jurisdiction, that is no reason why it should persist in error, after a more careful examination of the questions involved has exposed the true character of the issue. But an inspection of the record will show that the court was justified, by the case presented at the time, in what it did; and that its course has established no precedent for this application.

## ALLEGATIONS OF FIRST PETITION.

On the 6th of June, 1885, the administrator filed a paper entitled: "Petition for directions to realize on and collect in foreign assets and to settle partnership affairs with G. Andrade and others"; in which he set forth that Blythe was interested, either legally or equitably, as an owner either in common or in partnership with Andrade and others, in certain lands situate in Mexico; and also as a shareholder in a certain Mexican incorporation; and that the said Mexican property and assets are sources of heavy outlay and offer no prospect of producing any income. "And no means exist [said the administrator applicant] by which they can be made to produce an income without the expenditure of such sums of money as would prove disastrous to the estate." And for many reasons therein stated the administrator verily believed it would be for the best interests of the whole estate to sell all of the Mexican assets and to bring the proceeds within this jurisdiction; and the applicant further declared that: "Even if the colonization can be affected at any moderate cost, the Mexican property cannot thereby be made to yield any income to the estate, for the colonists will occupy but a

small portion of the lands, and must, by the terms of the contract between the Mexican Government and the partnership of Blythe and Andrade, receive the plots to be occupied by them gratuitously or at a nominal price, and other inducements must be offered to them to cultivate and improve the lands appropriated to them, while the large quantity of lands still remaining must be cared for and protected at heavy annual outlays to this estate.''

Further, the administrator applicant set forth that the only income producing property of the estate is situated in San Francisco, upon which there is a mortgage of $375,000, for the payment of which he believed provision would have to be made before the question of succession could be settled; and he stated, as his opinion, that if the heavy outlays now necessary for the protection of the foreign and other unproductive assets of the estate should continue, it would be impossible to accumulate sufficient funds from the income to pay off said mortgage within the period to which it might reasonably be expected to remain without foreclosure; and for the purpose of paying off this mortgage, and also to settle the partnership affairs with Andrade and others, the administrator prayed the court for an order authorizing him to sell the ''Mexican assets'' and allowing him $20,000 to carry out the project of sale.

Moved by the entreaty of this petition, the court (Rearden, J., temporarily presiding), on June 16, 1885, made an ''Order directing administrator to realize upon foreign assets and for settlement of partnership affairs with Andrade et al.'' In that order the statement of facts hereinabove recited from the petition was adopted and found by the court as facts upon which it authorized the expedition to Mexico and to Europe, to make sale of these Mexican lands, the retention and care of which would necessitate the expenditure of such sums of money ''as would prove disastrous to the estate,'' according to the administrator's petition.

The project of sale failed, for reasons not necessary to allude to here; and now we have an application to expend a certain sum of money in order to keep these lands—which sum, it is stated, will be all that is necessary for all time to come—the keeping of which, it was said, in June, 1885,

menaced with disaster the whole productive estate.  In acting upon that petition, the court was actuated by a desire to forefend disaster, and did not think it was inviting it, or establishing a precedent or a principle broader than the terms of the petition, or the rigid limitations of the order of June 16, 1885.  But even if it were otherwise, the question now presented must be met and decided without regard to the assumed attitude of the court, when it granted appropriations urged thereto by considerations of urgent necessity, presented by the administrator, and at a time when the question now raised was not fully, if at all, presented—certainly not thoroughly investigated.

In the course of the arguments upon this and the former applications, authorities were cited in great abundance, and from many states, and from the United States supreme court, and from the English reports, but it was not necessary, in the opinion of the court, to go beyond the confines of California to find a foundation for the judgment which must be pronounced upon the demurrer; and appended hereto will be found extracts at length from our own reports, which seem to me sufficient to justify the conclusion arrived at upon this application.

All through this administration the administrator has been dealing directly with these lands, and treating them as if clothed with power over them as administrator.  His present application and his former applications have been framed apparently upon the theory that he had the right to manage and dispose of these real assets, situated in a foreign jurisdiction, the same as if they were within the state of California. I have searched in vain for a single case upholding this view. Not one of the cases cited by counsel for the application refers to real assets, nor can the principles laid down in those cases be extended to the subject matter of this application. In the examination of the questions involved in this case, I have been aided by two articles upon "Foreign Administrators and Executors," published in the Albany Law Journal, volume 34, Nos. 14 and 15, pages 263-267 and 286-292.

These articles comprise a fair review of most of the American authorities (outside of California) upon the subject treated, and they are here referred to as an aid to investiga-

tion. I am satisfied that the administrator has proceeded upon a mistaken theory of his duty, and of the power of the court, in dealing with the Mexican assets, and that his notion of his liability to the heirs in this connection is erroneous. The administrator, in the brief of his counsel (page 31), asks: "Why should he not protect the Mexican assets if Mexico will let him? Is he not specially charged with the care of California lands, and authorized to make proper expenditure for the purpose? Why is he not chargeable with the care of the Mexican lands, and authorized to make proper expenditures for the purpose, if his powers are as great in Mexico as here?"

His powers are not as great in Mexico as here; as administrator he has no power there whatever over real property; the fact stands admitted here that neither in his personal capacity nor in his official character has he, nor can he take, title to those Mexican lands. While it is true, as claimed by the administrator, that he must include in his inventory all the estate which has come to his possession or knowledge (Code Civ. Proc., sec. 1443 et seq.; Estate of Butler, 38 N. Y. 397), it does not follow that he is bound to account for assets situate without the jurisdiction of the Court by which he was appointed (Sherman v. Page, 85 N. Y. 123). If the public administrator should go to Mexico, what office can he perform—what function would he possess? This court cannot endow him with any official character beyond the borders of this state, and when he appears elsewhere he is simply a citizen abroad without any representative faculty whatsoever. Where he has no power, he can have no duty. As an alien in Mexico he cannot hold the title to these lands, and the official relation that he holds to this estate cannot repair his personal disability. We are called upon to administer, under the laws of California, an estate situated in Mexico. In may be well here to quote, as apposite to this case, the concluding remarks of Mr. Justice Cope, in deciding De la Guerra v. Packard, 17 Cal. 183: "In our view of the rights and liabilities of the heirs under the Mexican system, we do not see upon what principle the estate was subjected to administration under our statute; and we are inclined to

the opinion that whatever has been done in this respect must be regarded as unauthorized and illegal.''

But it is now claimed by counsel that we are dealing with an executory contract which this court may authorize the administrator to fulfill. This argument in no manner applies to the question raised by the demurrer to the petition of the administrator, nor does it agree with the position assumed up to this time throughout the controversy by the administrator. (See his printed brief, passim, especially page 12, as to the duty of the administrator ''in respect of Mexican assets.'')

This is either a partnership interest or a trust (see administrator's petitions); it cannot be the same as an executory contract; it is a personal asset or a real asset—which?

The paper itself—the contract—is not an asset; it is the thing itself represented by that paper, i, e., the lands in Mexico, with which the court deals. This court, sitting in probate, has no chancery side, as the supreme court of the state has more than once decided since the adoption of the constitution of 1879; it deals only with administrations, and cannot assume jurisdiction, except the object upon which it is to operate is before it. If Blythe died, leaving no estate at all within the territorial jurisdiction of California, and no estate but these ''Mexican assets,'' it would hardly be claimed that by virtue of that ''executory contract,'' administration might be had in California, and the terms of the contract enforced through the process of the probate department of the superior court. No obligation, in any event, rests upon the administrator to go into Mexico, any more than to go into India or Australia, or any other remote country, to deal with real estate, and, consequently, no liability can attach to his not doing so. So far as he makes any point on the statute of this state, enlarging his liability, he errs, in my judgment. Section 1443, Code of Civil Procedure (to which he refers in this connection), relates only to estate actually or in legal contemplation within this state; this has been the uniform practical construction of the courts, and is shown to be correct by a reading of all the sections of the Code of Civil Procedure bearing upon this subject: Code Civ. Proc., secs. 1449, 1452, 1516, 1581.

While I have paid due respect to the foreign authorities upon the issue here presented, I think the question may readily rest upon the decisions of the supreme court of California, from 12 Cal. 207, to 66 Cal. 432. See the extracts subjoined to this opinion.

Demurrer sustained.

## APPENDIX.

By the COURT. In the Matter of the Estate of Knight, 12 Cal. 207, 73 Am. Dec. 531, Mr. Justice Baldwin, delivering the opinion of the court, said: "This is unquestionably a hard case on the administrator, for he seems to have acted in good faith. But we cannot relax or set aside the rules of law to suit the exigencies of particular cases or relieve individual instances of hardship. The statutes of this state do not allow an administrator to pay even the debts due by an intestate, except in a particular way. Certainly they do not allow him to pay money not due by an intestate, upon the idea that the payment may be beneficial to the estate.

"He is to take care of, manage and preserve the estate committed to him; but this does not mean that he is, at discretion, to pay off all encumbrances resting on the property, upon the notion that the property may be increased in value, and thereby a speculation may be made for the estate.

"If this were so, an administrator might consume all the assets of the estate in clearing the title to a portion of the property, and then the property may turn out to be valueless or worth but little. If a case should arise in which a great sacrifice would ensue unless money were paid to discharge an encumbrance, it is not impossible that a court of chancery might order the expenditure of the money needed to remove such encumbrance.

"The rule of equity is that a trustee has a right, in questions of responsibility and difficulty, to seek the direction of a court of chancery touching his conduct in the trust, and that the decree of the court is a protection to him. But if he undertakes to go beyond the strict line of duty, as the law defines it, he acts on his own responsibility, and while he can receive no profit from a successful issue of his in-

vestments, he must bear the loss of a failure. It would be a most dangerous precedent to hold that an administrator may speculate with the funds of an estate, or pay charges not allowed by law, though solely with the view of benefiting the estate, and then throw the loss upon the estate, and assign his good intentions as a defense to the injurious consequences of his act.

"The administrator, in the absence of special authority, must administer the estate as he finds it, paying taxes and other necessary expenses, and doing such other acts as are necessary to preserve it as left; but he cannot advance money to remove encumbrances, unless the intestate was bound to pay the money. If he takes the responsibility of improving the estate or bettering the title in this way, it must be at his own risk. The loss cannot be visited upon the heirs, who gave him no authority to cause it. Nor can he ask legal protection when he has himself, though with the best motives, gone beyond the provisions of the law."

In the case of Smith v. Walker et al., 38 Cal. 385, 99 Am, Dec. 415, the substance of the opinion of the court, by Mr. Chief Justice Sawyer, is correctly stated in the syllabus, in these words: "The surviving member of a partnership owning real property is something more than a mere tenant in common with a representative of the estate of a deceased partner. He is the trustee for the purpose of winding up the affairs of the firm, and is accountable for the value of the use and occupation of the landed estate of a partnership. The surviving partner is bound to account and pay over to the administrator of the deceased partner all the profits of the realty, as well as that of the personal property, that rightfully belongs to the estate, notwithstanding he may have purchased the interests of the heirs in the estate or the community interests of the surviving wife of the deceased partner; and it is for the probate court to distribute the estate to the parties entitled."

In the course of the argument of the counsel for the appellants, in Tompkins v. Weeks, 26 Cal. 52, Eugene Casserly said: "There is probably no case in which an executor can lawfully make a purchase of property, except where the

transaction is necessary for the protection of the estate, and at the same time involves no expenditure or liability; as where, upon a foreclosure sale, the executor holding the first or only mortgage of property about to be sold for a sum far below its value, and below the amount due on the mortgage, he bids it in for the benefit of the estate, and holds it precisely as he had held the mortgage. That was the case in Clark v. Clark, 8 Paige, 152, 157, 158.''

That is the case referred to by the counsel for the public administrator, on page 26 of his Points and Authorities before the referee.

In the case of Tompkins (administrator of the estate of Miner) against Weeks, 26 Cal. 66, after quoting with approval the Estate of Knight, 12 Cal. 207, 73 Am. Dec. 531, Mr. Justice Sawyer for the court, in the course of his opinion, said:

''The court had no jurisdiction to make the order, and the administrator no authority to execute it. The partnership was dissolved by the decease of Miner.

''The partnership property are assets of the firm, and subject to the exclusive management and control of the surviving partner. It was not assets of the estate in the hands of the administrator. Only the share of the deceased in the residuum of the partnership assets, after the affairs of the partnership should be wound up and the debts paid, would be assets of the estate in the hands of the administrator.

''The administrator had no authority to intermeddle at all with the partnership affairs, except so far as he was entitled to call upon the surviving partner to proceed and close up the partnership affairs, and to account to him for the share of the surplus belonging to the estate. The authority of the administrator only extended to settling up the affairs of the estate, paying the debts and distributing the remainder, under the direction of the probate court, to the parties interested.''

In the case of Brenham v. Story, 39 Cal. 179, at page 186, Mr. Justice Temple, delivering the opinion of the court, said: ''The duty of an administrator is to take charge of the estate for the purpose of settling the claims, and, when they have been satisfied, it is his duty to pass it over to the heir,

whose absolute property it then becomes. To allow the administrator to sell, to promote the interests of those entitled to the estate, would be to pass beyond the proper functions of an administrator, and constitute him the forced agent of the living for the management of their estate."

In speaking of the act of the legislature, under discussion in that case, the judge further said (page 188): "That it was clearly an attempt to use the office of the administrator to speculate with the estate of the heirs, and not to administer the estate of the deceased. This is plainly beyond the power of the administrator as such. It is no part of his duty or authority to manage the estate for the benefit of the estate, or of the heirs. So far as they are concerned, it is his duty, simply, to preserve the estate until distribution. He cannot make investments for them, or satisfy adverse claims, or sell because the estate will profit by it: Estate of E. Knight, 12 Cal. 207, 73 Am. Dec. 531."

The case of De la Guerra v. Packard, 17 Cal. 183, 193, was a case where one Lataillade, a decedent under the Mexican law, left no will, and one Jose De la Guerra, who was the legal representative of the decedent, took possession of decedent's estate, and attempted to administer the same without authority, paying out large sums in excess of his receipts.

In 1857 administration was obtained in the probate court; defendant Packard ultimately obtaining letters. De la Guerra having died, his executors sued to recover from the administrator of Lataillade for the excess of disbursements made by De la Guerra in the matter of the Lataillade estate. The court held that any claim by De la Guerra's executors should have been brought against Lataillade's heirs directly, as having been made for their benefit, and not against the estate.

Mr. Justice Cope, in his opinion, says (page 193):

"Our conclusion is that, by the rules of the common law, the plaintiffs are not entitled to recover, and we are satisfied that whatever may be their rights under the laws or jurisprudence of Mexico, they have mistaken their remedy.

"Under the Mexican system their testator stood in the position of a voluntary agent, and represented the persons of the heirs, and not the estate.

"The heirs succeeded immediately to the estate, and became personally responsible for the debts of the deceased. The disbursements and payments of these debts were on behalf of the heirs, and in discharge of their personal liability. If any claim exists for the amount of these disbursements, it is against the heirs, and not against the estate.

"Indeed, in our view of the rights and liabilities of the heirs under the Mexican system, we do not see upon what principle the estate was subjected to administration under our statute, and we are inclined to the opinion that whatever has been done in this respect must be regarded as unauthorized and illegal."

In Rolfson v. Cannon, 1 West Coast Rep. 696, 3 Utah, 232, 2 Pac. 205, Mr. Justice Twiss, of the supreme court of Utah, says:

"It is the duty of an administrator to administer an estate, to take care of and preserve it, to collect all the moneys and to dispose of the balance in his hands as required by law.

"Having done this, the estate is administered and he entitled to his discharge, and the heirs are entitled, in due form of law, to their especial portion of the estate. The administrators were not authorized to erect the dwelling-house with the funds of the estate, or a house to be occupied by one of them, or for any other use or purpose. Neither could they involve the estate by borrowing money, with which to pay for the material or for the labor performed in the construction of such houses. They did not have authority to charge the estate with the repayment of the money borrowed by them for that purpose. The borrowing of this money was not a contract between Heath as administrator and the appellant, although it may have been a contract between him individually and the appellant. The facts that the estate of the deceased was improved, and the value of it enhanced by the erection of the houses, and that the money was borrowed for the purpose of, in part, paying for the material and labor necessary for the construction of the same, do not make the estate liable for the debts thus contracted. An administrator is not permitted to use the funds of an estate, or to borrow money upon its credit or liability for such speculative purposes."

While an Executor or Administrator has no Authority to pursue assets of the estate by legal process in a foreign jurisdiction, he nevertheless owes a duty to collect them to the extent of his ability to do so, and the court should compel him to account for his failure to perform this duty. There is no doubt of his authority to receive the voluntary payment of debts in a foreign jurisdiction, at least if no ancillary administration has been granted there. He must account in the domiciliary administration for the money received, and the payment will discharge the indebtedness even as against an ancillary administrator subsequently appointed: Estate of Ortiz, 86 Cal. 306, 21 Am. St. Rep. 44, 24 Pac. 1034; Fox v. Tay, 89 Cal. 339, 23 Am. St. Rep. 480, 24 Pac. 855, 26 Pac. 897; Joy v. Elton, 9 N. D. 428, 83 N. W. 875; note in 45 Am. St. Rep. 664.