FANNY BRADNER, Appellant, *v.* JAMES FAULKNER, Respondent.

The Revised Statutes, making "growing crops" on the land of the deceased, at the time of his death, assets in the hands of his executors, &c., have not changed the law as to the construction of wills, in the ultimate disposition thereof.

Such "growing crops" now, whether bequeathed or devised, go primarily to the executor, &c., to be used, if necessary, for the payment of debts and legacies; but if not necessary for that purpose, they go to the beneficiary under the will.

The devise of a farm, in the absence of any modifying words, now as before the statute, carries with it the crops growing thereon.

ON the 19th of June, 1848, Amariah Hammond made his will, by which he gave and devised a farm of land to his daughter, the plaintiff, and appointed defendant one of his executors. Testator died on the 5th of November, 1850, seized of that farm, and on the 31st of December, 1850, letters testamentary were issued to his executor. When testator died, there was growing upon said farm a crop of wheat, and in July, 1851, defendant, as executor, took a portion of that wheat, of the value of $175.25, and converted the same to his own use. It would seem, from the assumption of counsel, that the testator left no debts against him.

On the 2d day of July, 1857, as it appears from the date of the summons, the plaintiff brought an action against the defendant for the alleged wrongful taking and conversion of the wheat, the issue in which was tried in April, 1858, in Livingston county, where the court decided in favor of the defendant, on the ground that the wheat belonged to the defendant, and not to the plaintiff; that it did not pass to the plaintiff by the devise to her of the farm. That judgment was affirmed at the General Term, and the plaintiff has appealed to this court.

*John H. Reynolds,* for the appellant.

*Solomon Hubbard,* for the respondent.

PECKHAM, J.  The question presented here is, who ultimately owned this crop of wheat?  As I understand the opinion of the learned justice who tried this cause (none was given at the General Term), he held that this wheat did not pass to the plaintiff by the devise to her of the farm; that, since the Revised Statutes, it would go to the executor, to be applied and distributed under other provisions of the will.

The Revised Statutes declare that " crops growing on the land of the deceased, at the time of his death, shall be assets, and shall go to the executors or administrators, to be applied and distributed as part of the personal estate of the testator or intestate, and shall be included in the inventory thereof." (2 R. S., 82, § 6; also sub. 5.)

This is plain and imperative language.  Comment or illustration cannot make it plainer, and there is nothing in this case to prevent its application to this crop of wheat. There is no limitation or qualification to this statute rule. It applies as well to devisees as to heirs; no exception is made of either, and there is no reason for an exception.  It is evident that the legislature had devisees in contemplation in these provisions, as their rights are regulated in this chapter in various respects.  The language of this provision being plain and clear, there is no occasion to resort to the notes of the revisers, or to any special rules of construction, to learn the legislative intent; though I think they all harmonize with the plain language of the act.

For what purpose shall these assets go to the executors?

The statute further provides that, " if necessary for the payment of debts and legacies," the personal property of the deceased shall be sold.

That in making such sales, such articles " as are not specifically bequeathed," shall be first sold. (2 R. S., 87, §§ 27, 28.)

In this case there seem to have been no debts, and the sale of this wheat, it is not pretended or claimed, was necessary for the payment of legacies.

When it legally appeared that this wheat was not necessary for the payment of debts or legacies, the executor should then dispose of it as directed by the will.

To whom, then, did the wheat ultimately belong?

In my judgment, it belonged to the devisee of the land.

At common law, crops growing on land passed to the devisee of the land. This was conceded on the argument. They passed to the devisee upon the presumed intention of the testator, that he who took the land should take the crops which belong to it. (*West* v. *Moore*, 8 East, 339; 1 Willard Ex., 660, and authorities there referred to.) In such case, the crops did not go to the executors. This "presumed intention" of the testator might be rebutted by slight intimations in the will of a different purpose.

As, where he gave all his personal property to his executor, it was held to carry the crops to him as against the devisee of the land. (1 Willard Ex., 602, note *s*.)

There is nothing in this will to alter or affect the presumed intention of the testator.

The statute has not assumed to alter any rule of construction as to wills. All the alteration it has made, so far as it touches this case, is, that it has made certain things assets to go to the executor which before went to the devisee.

In the first subdivision of the sixth section, it makes land held for the life of another, though specially devised, assets to go to the executor.

That land is made personal property, at least for that if not for all purposes. But if not wanted for the payment of debts or legacies, of course, when that legally appears, it goes to the devisee.

So do these crops. The statute has in no respect changed their character. They are personal property. They were so before the statute. They are so still. Only now, in all cases, whether bequeathed or devised, they primarily go to the executors to be used, if necessary, for the payment of debts and legacies. If not necessary for that purpose, then they go to the beneficiary under the will.

But the same language that would devise or bequeath these crops before the statute, will devise or bequeath them now.

In truth, there is just as much propriety in these crops

passing by a devise as by a deed in the land, though the principle upon which they pass is not the same. The rule, however, being well settled that they do pass, it is not important here to inquire as to its propriety.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

Judgment reversed.