DANIEL DENNETT, Executor, *vs.* SAMUEL HOPKINSON.

*Devise. Emblements. Executor. Will, construction of.*

Unharvested crops go to the devisee of the land, and not to the executor. As against the heirs at law they go to the executor; but as against a devisee they do not, unless it appear by the will that the testator so intended.

Hay in a barn passes under a bequest of "all the household furniture and other articles of personal property in and about the buildings."

ON FACTS AGREED.

TROVER for the conversion of certain hay in a barn and other

crops, corn, beans, &c., gathered and stored upon the premises which belonged to the plaintiff's testator, Nathan Hopkinson, at the time of his death. The defendant admitted the taking and justified it under the terms of the will of which the plaintiff is executor, and the parties submitted the question of the true construction of this instrument, and the rights of the parties under it, to the determination of this court upon the facts as agreed upon by them.

Upon the sixth day of February, 1864, said Nathan Hopkinson made this will, by the first clause of which he devised the farm, upon which the hay and crops in dispute grew, to the son of the defendant, in these terms, viz.: "First. I give, devise and bequeath to Nathan Hopkinson, son of my cousin, Samuel Hopkinson, now residing in the State of Illinois, my homestead farm; also all the live stock of all kinds and all the farming utensils, implements and tools not otherwise disposed of which I may leave at my decease, to have and to hold to the said Nathan Hopkinson, his heirs and assigns forever."

Then followed twenty-two pecuniary legacies to distant relatives, friends and former employees of the testator and to a literary institution. Then item "24. Until Nathan Hopkinson, named in the first devise and bequest in this will, shall arrive at the age of twenty-one years, I give and bequeath the use, improvement and income of my said farm and of the live stock and farming tools, utensils and implements to the said Samuel Hopkinson, his father ; provided and on condition that the said Samuel shall keep the farm, buildings and fences, tools and utensils, in as good order and condition as when they shall be left by me, and shall keep the stock good without diminution or depreciation and shall support and properly educate said Nathan till he arrives at full age. And I also give and bequeath all the household furniture and other articles of personal property in and about the buildings to the said Samuel, to be used by him till the said Nathan becomes of age, and afterwards to the said Nathan as his own property."

By the twenty-fifth clause, the testator declared his intention to

dispose of his whole estate and directed the division of any surplus, after payment of debts and legacies and satisfying devises, among those to whom pecuniary bequests are given. The next and final clause appointed Daniel Dennett, executor.

The testator died August 31, 1868, never having been married, and having neither parents, brother nor sister. His namesake, to whom he devised his farm, was living in Illinois with his father, Samuel Hopkinson, and was then about six years old. The death of the testator was not communicated to Samuel and his family till October 24, 1868. They came to Maine and entered upon possession of the farm and property connected therewith January 19, 1869, and afterwards consumed and sold the hay and other crops which they found stored in the buildings upon the place.

The item of chief value was the hay, worth several hundred dollars, which had been cut and stored in the barns, before August 31, 1868, the day of the testator's death. The other crops, corn, beans, potatoes, &c, were gathered and placed in the buildings upon the estate after that date by the plaintiff, claiming to act as executor. He subsequently demanded these articles of produce, including the hay, of Samuel Hopkinson, after the latter entered into possession of the premises; and upon his refusal to deliver them, or pay for them, this action of trover was commenced, which was submitted to the court upon the foregoing facts and such inferences as might properly be drawn therefrom. The substance of the issue was that each party claimed title in himself to the property in controversy under the above recited testamentary provisions.

*L. B. Dennett,* for the plaintiff.

This is a question of intention. The word "income" in the devise to the defendant is preceded by the words "use and improvement," showing that it is only the income derived from such use and improvement that is given him, and not the income already acquired before the testator's death.

If the intent be doubtful, then the general principle, that "he who sows shall reap the crop," which always carries emblements

to the executor against the heir, applies. The language employed, as well as the omission to expressly so state, rebuts any presumption that the testator desired the crops to pass to his devisee. 1 Washb. Real Prop., 122, § 14; *Drinkwater* v. *Drinkwater*, 4 Mass., 358.

The hay was not necessary for carrying on the farm,—only convenient and profitable for that purpose,—and therefore not necessarily an incident to the transfer of the land. *Lawton* v. *Lawton*, 3 Atkyns, 16; which case answers the defendant's argument from utility and inconvenience. The hay cannot pass under the general bequest of "household and other articles of personal property," &c., because not *ejusdem generis* with the items specified.

*Edwin B. Smith*, for defendant, relied on the distinction between the rights of a devisee and an heir at law as to crops growing at the time of the testator's death, citing: Noy's Maxims, (99); 2 Redfield on Wills, (1st ed.) 141, c. V., sect. VI., § 21, item 3, (3); *Spencer's case*, Winch, 51; *West* v. *Moore*, 8 East, 339; 2 Bouvier's Inst., 164; Tollar on Executors, (4th Am. Ed.) 203; 3 Dane's Ab., c. 76, Art. 6, § 8; Roberts on Frauds, 364, 365; Amos & Ferrard on Fixtures, *173, *174; *Henshaw* v. *Blood*, 1 Mass., 35; *Dean* v. *Dean*, 3 Mass., 258; *Drinkwater* v. *Drinkwater*, 4 Mass., 354; *Willard* v. *Nason*, 5 Mass., 240; *Gibson* v. *Farley*, 16 Mass., 280; *Stinson* v. *Stinson*, 38 Maine, 593; *Mills* v. *Merryman*, 49 Maine, 65: *Hobson* v. *Yancey*, 2 Grattan, (Va.,) 73; *Fay* v. *Holloran*, 35 Barb., (N. Y.,) 295, and numerous other authorities and cases, claimed to be applicable either directly or by analogy.

For the purpose of properly carrying on the estate, the hay was *ejusdem generis* with the other articles mentioned, though different in mode of use and in character.

WALTON, J. Unharvested crops go to a devisee of the land, and not to the executor. As against the heirs at law, they go to the executor; but as against a devisee they do not.

It is not easy, says Mr. Hargrave, to account for this distinction,

which gives corn growing to the devisee, but denies it to the heir. Mr. Broom also expresses the same opinion. Lord Ellenborough thought the distinction "capricious." But they all agree that such is the law.

Mr. Broom's statement of the law is as follows. He says that where a tenant in fee or in tail dies after the corn has been sown, but before severance, it shall go to his personal representatives and not to the heir; but if a tenant in fee sows the land, and then devises the land by will, and dies before severance, the devisee shall have the corn, and not the devisor's executors. Broom's Legal Maxims, 4th ed., 269.

Lord Ellenborough's explanation of the distinction is as follows. He says that in the testator himself the standing corn, though part of the realty, subsists for some purposes as a chattel interest, which goes on his death to his executors as against the heirs, though as against the executors it goes to the devisee of the land, upon the presumption that such was the intention of the devisor in favor of his devisee; but that this presumption may be rebutted by other words in the will, which show an intent that the executor shall have it. *West* v. *Moore*, 8 East, 339.

And in a case tried before Holt, C. J., where the question was whether corn growing passed to the devisee of the land or his mother, the widow, to whom the testator had bequeathed "all his goods, chattels, etc., and the stock of his farm," the case of Spencer, Winch., 51, was urged, where it was resolved that the devisee of land sown should have the corn, and not the executor of the devisor; to which it was answered, "that is true, if the intention of the testator does not appear to be otherwise." And Holt, C. J., held that in that case it did appear that the intention of the testator was otherwise. It has been doubted whether Chief Justice Holt's construction of the will was correct; but the decision is valuable as showing, first, that the general rule of law is that a devisee of the land will hold the unharvested crops; second, that the rule is based on the presumption that such was the intention of the testator; and third, that this presumption

Dennett v. Hopkinson.

may be rebutted by other clauses in the will showing that such was not his intention. *Cox* v. *Godsalve*, 6 East, 604, note.

And such, we take it, is the settled rule where the common law is in force. It is not only so laid down in the text books and cases already cited, but in many others. Buller's Nisi Prius, 34 ; Coke Litt., § 68, note 2 ; 4 Bacon's Ab., Bouvier's ed, 83 ; 1 Chitty's General Practice, 92 ; 2 Bl. Com., Sharswood's ed., 122, note 2 ; 2 Red. on Wills, 141 ; Broom's Legal Maxims, 4th ed., 269 ; Gilbert on Ev., 214 ; Cro. Eliz., 61 ; Spencer's case, Winch, 51 ; *Cox* v. *Godsalve*, 6 East, 604 ; *West* v. *Moore*, 8 East, 339.

We find on examination that in many of the States this matter is regulated by statute ; but we are not aware of any such statute in this State. There is a provision, that when from any cause there is a delay in granting letters testamentary, or of administration, a special administrator may be appointed, whose duty it shall be to collect all the goods, chattels, and debts of the deceased, control and cause to be improved all his real estate, and collect the rents and profits thereof, and preserve them for the executor or administrator thereafter appointed, etc. R. S., c. 64, § 33. And we find another provision, declaring that if any part of the real estate is used or occupied by the executor or administrator, he shall account for the income thereof to the devisees or heirs in the manner ordered by the judge of probate, etc. R. S., c. 64, § 55. But these provisions were obviously intended for other purposes, and were not designed to change the rule of the common law with respect to the ownership of unharvested crops.

And we are inclined to think the law is best as it is ; that although the rule which gives to the devisee of the land the unharvested crops, and denies them to the heir at law, may seem to be unphilosophical, it is nevertheless founded in practical wisdom. Not unfrequently the heirs at law are mere children, without discretion of their own, to enable them to care for the growing crops, and without legal guardians to aid them. They are sometimes scattered and far away. The death of the ancestor may be sudden, and the condition of his family such, that the crops, unhar-

vested as well as harvested, may be needed for their immediate support. Will it not be better, therefore, in the great majority of cases, that all the crops, the unharvested as well as those that are harvested, should be regarded as personal property, and go to the administrator? We cannot resist the conviction that it is better that it should be so.

Not so, however, of a devisee of the land. He is the selected object of a specific donation. If for any cause it is probable that he will not be in a condition to take charge of it at the donor's death, the contingency can be provided for in the will. It is a matter which the testator would be likely to think of, and provide for, if necessary. If there is no such provision, and the gift is unconditional, without words of limitation or restraint, we think it may fairly be presumed that it was the intention of the donor that his donee should take the land, as a grantee would take it, with the right to immediate possession, and the full enjoyment of all that is growing upon it, as well the unsevered annual crops, as the more permanent growth.

In this case the homestead farm of the testator was devised to his cousin and his cousin's son—the father to have the use, improvement and income of it till the son should arrive at age, the son then to have it as his own property. There is nothing in the devising clauses, or in any other part of the will, to rebut the presumption that the devisees were to have the unharvested crops that might be growing upon it at the time of the testator's death. On the contrary the presumption is very much strengthened by the fact that the testator gave all his live stock and farming tools, and all his household furniture and other articles of personal property in and about the buildings to the same persons. It is impossible to except out of these two sweeping clauses, any of the crops, whether harvested and in the barns, or still growing upon the land unharvested. If harvested and in the barns, they would pass by virtue of that clause in the will which bequeaths all articles of personal property in and about the buildings. If not harvested they passed as part and parcel of the realty.

The result is that this action, which is trover by the executor against one of the devisees named for the conversion of these same crops to his own use, cannot be maintained. As against the executor, the defendant's was the better title.

*Judgment for defendant.*

APPLETON, C. J., DICKERSON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.