Teller, S.
—This is a proceeding for the judicial settlement of the accounts of an administrator with the will annexed. The deceased died in June, 1881. The will was admitted to probate and letters issued July 12, 1881. No executor was named in the will. By it, after payment of debts, the use of “all real estate and personal property during her life-time” is given to the testator’s wife. It proceeds, “ after her death the property is to be divided as I have here directed in this my will.” Following are bequests of several legacies in money. The fourth clause is: “I bequeath to my daughter Sarah Treat the use of $1,500 during her life-time; after her death to be equally divided between the heirs of my son * * * and Willie Kick, my grandchild. There are three subsequent bequests of money legacies and a last clause in these words:
“ The residue to be equally divided among my heirs, if any residue remains.”
The first question presented, and one attended with many difficulties, is as to the jurisdiction of this court in construing the will in respect to the disposition sought to be made of the testator’s real estate. The court has the power to interpret a will so far as the distribution of the property is involved, in the sccounting. The authority is conferred by implication, being incidental to the powers expressly conferred by statute or to the attainment of justice in the particular cases to which the court’s jurisdiction extends. Among those are the directing and controlling of the conduct and settlement of the accounts of executors and admintrators, the enforcing of the payment of legacies and debts, and incidentally the determination of the rights of parties as to payment of legacies by those officers. Riggs v. Cragg, 89 N. Y., 480.
When the question of the rights of parties as to legacies is not involved in the accounting and not necessary to be determined by the surrogate, he has no jusisdiction to decide whether the legacies are chargeable upon real estate. Bevan v. Cooper, 72 N. Y., 317.
In order to ascertain how far the jurisdiction of this court in the particular case extends, it is necessary to know whether the legacies mentioned in the wil are to Rny extent *690 chargeable upon the real estate, and whether power of sale is given to the administrator with the will annexed.
Is there an equitable conversion of the real estate into personalty ?
The intention of the testator, as gathered from all the provisions of the will and from the facts and circumstances under which the will is made, must control in its interpretation. The court should reconcile, if it can, all the language employed in the will, and give such a construction as will carry into effect the apparent intention of the testator.
Are the legacies here charged upon the real estate ?
In the case of Ragan v. Allen (7 Hun, 537), an action brought for the construction of a will, by which the testator gave his wife $2,000 for the term of her natusal life, and after her decease to his daughters; also legacies of $600 and $100 to his grandchildren, and “the rest, residue and remainder of all his real and personal estate of every name and kind, soever, to his two daughters,” it was held in this, then fourth department, that the property, both real and personal, passed to. and become vested in the residuary legatees, charged with the several legacies.
The court, after reviewing a' number of authorities, deduced the rule, that when a testator gives several legacies, and then, without creating any express fund or trust for their payment, makes a general residuary disposition of the whole estate, blending the real and personal together in one fund, the real estate is to be charged with the legacies, upon the ground that in such case “the rest, residue and remainder can only mean what remained after satisfying the previous legacies.” Citing Hill on Trustees, 360, and Perry on Trusts, § 570.
The case of Hoyt v. Hoyt (17 Hun, 192), involved in the interpretation of a will by which a testaior gave $1,500 to each of several legatees named, and, by a subsequent clause, he gave and devised “ all the rest, residue and remainder of my (his) real and personal estate to” a person specified. It was held that the money legacies were charged upon the real estate.
This case was affirmed by the court of appeals (85 N. Y., 142), and after a careful consideration of American and English authorities, the rule was laid down that legacies may be charged upon real estate without express direction, if the intention of the testator so to do can be fairly gathered from all the provisions of the will.
The case of Forster v. Civill et al. (20 Hun, 282), was upon " a will by which nine specific legacies, amounting fo $57,000, were given. No specific devise of the real estate was made. The residuary clause of the will read “All the rest, residue and remainder of my estate, real and personal, whatsoever and whensoever, I give, devise and bequeath to my wife to have and to hold to her, her heirs and assigns forever.”
*691 It was held that the legacies were charged upon the real estate.
In the case of Finch v Hull (24 Hun, 226), the use of all real and personal estate was given to the widow during her life; $1,000 was given her absolutely. The language of the residuary clause was: “ The rest of my estate, after deducting the above-mentioned $1,000, I give and bequeath as follows.” The court says We think this made the legacy of $1,000 a charge on the testator’s real property.
By the will, passed upon in McCorn v. McCorn (30 Hun, 171), affirmed by court of appeals (100 N. Y., 511), $1,000, etc., was given to the testator’s wife and $400 to one of his sons. It then proceeded as follows: “I devise that the rest of the property shall be divided equally between” four children, naming them. It was held that the legacies 4o the wife and son were chargeable upon the real estate.
A will, in which one-half of an estate was given to the testator’s wife and the other half to his son “ subject to the exceptions hereinafter named,” and “ unto (a servant) her support during her natural life, to be paid out of the whole property according to the exceptions above named, was construed by the court to charge the servant annuity upon the whole estate. Johnson v. Cornwall, 26 Hun, 499.
The decision was affirmed by the court of appeals (91 N. Y., 660.
In the case at bar the testator gives the use of all his ■“ real estate and personal property” to his wife during her lifetime; after her death “the property” is to be divided as he “has here directed.” After the money legacies, .amounting to $4,905, which follow, he says: “ The residue to be equally divided between my heirs, if any residue remains.”
It appears from the inventory in evidence and the account ■presented that the personal estate left by the decedent, .amounted only to about $3,000.
It is evident that the testator, in his will, used the words “the property,” to include both real and personal property, as it relates to the same property, of which the use is given his wife. It is also apparent that in the residuary clause, the word residue refers to the remainder of his real and personal estate. There is no other devise of real estate. It must have been known by the testator that unless these legacies were to be paid from his real estate, they would to .a great extent fail. The ending of the last clause of the will: “If any residue remains,” indicates that the testator had some doubt, whether, after satisfying the legacies mentioned, there would be -any property, personal or real, left. ‘The only other view must be that he did not intend to make .any disposition of his real property by will, and that he understood his personal property would be about sufficient "to satisfy the legacies. This view is unreasonable, and it *692 must be held that the personal and real estate are blended in the residuary clause, and the terms used show that the testator understood that both kinds of property would be taken from, in paying the legacies. From the relation of the parties, the facts that infants and grandchildren were made beneficiaries, it must be assumed the testator intended the legacies should be paid at all events and that none of the recipients of his favor should suffer from any material abatement of the legacies. The conclusion must, therefore, be, that the real estate of which the testator died seized, passed to “his heirs,” meaning his children and the descendants of deceased children, per stipes, charged with the payment of the legacies named, so far as they are left unprovided for by the personal property.
The next inquiry is whether, there being no executor named in the will, the administrator with the will annexed. has power to sell the real estate and distribute the avails. The powers of administrators with the will annexed, are-specified in section 22, page 72, of 2 Revised Statutes, as follows: “ In all cases where letters of administration with the will annexed, shall be granted, the will of the deceased shall be observed and performed; and the administrators with such will, shall have the rights and powers, and be subject to the same duties, as if they had been named executors in such will ”
There is no express power of sale given by the will. No person is named as executor, and unless there is an equitable conversion of land into money for the purpose of distribution, it would be difficult to see how the testator could have contemplated the exercise of such a power by any one in a trust capacity. The cases which have held the power of sale to be implied have been those, in which such sale was necessary to carry into effect the intention of the testator,; as where the proceeds of a sale were to be handled or invested, or paid in a certain manner by the donee of the power, or where the directions of the testator would otherwise be inoperative. In the case of Mapes, executor, v Tyler (43 Barb., ‘421), all the property of the testator was given to his children. The executors were required to rent a farm for ten years and divide the proceeds.
At the expiration of that period, the will provided that said property should be sold and the proceeds equally divided amongst the heirs mentioned in the will. It was held that the executor was not authorized to sell and convey the real, estate. The court say: “ When, as in this-case, the land is expressly devised to persons named and competent to take under the will, no such equitable conversion occurs, and the distinction is clearly drawn between this case, in which there is an absolute devise of real estate to the persons named in the will, and the cases in which property is directed to be sold and the proceeds divided.” *693 This distinction is also made in the case cite of Meakings v. Cromwell, 5 N. Y., 139).
In The Matter of Will of Fox (52 N. Y., 530), the language of the will was : “ First. After all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give, bequeath and dispose of as follows, to wit,” etc. The court of appeals held that the intention was to devise the land, and that it should pass, charged with the payment of the debts. No express power was given to the executors to sell. Nor under our system of administering the property of decedents for the payment of creditort can such a power be implied from the mere charge of debts upon lands descended or devised. Lands charged only with the payment of debts retain their character of realty until actually converted.
If, however, a sale be necessary to carry out the intention of a testator, a power to sell will be implied. Morton v. Morton, 8 Barb., 18; Dorland v. Dorland, 2 id., 63.
The statutes provide that administrators with the will annexed shall have the same rights and powers, and be subject to the same duties as if they had been named executors in such will. 2 R. S., p. 72, § 22. After much uncertainty on the part of the courts with regards to the scope of this power, the court of appeals have in the case of Mott v. Ackerman (92 N. Y. 553), held that when a power of sale is given executors for the purpose of paying debts and legacies or either, and especially when there is an equitable conversion of land into money for the purpose of such payment and for distribution and the power of sale is imperitive and does not grow out of a personal discretion confided to such individual, such power belongs to the office of executor and under the statute passes to and may be exercised by the administrator with the will annexed. The case at bar stands then as if the party now accounting had been named executor in the will, and the inquiry is whether, had he been so named, would he have had the power of sale virtute officii. The testator upon the termination of the life estate of his wife, directs that the property, evidently meaning the real and personal be divided, as here directed: that is, in money legacies, one of which is to a daughter, for her use during her life; then to be divided as stated. In disposing of the residue of his property, he uses the words: “ If any residue remains,” showing the belief that there would, after the payment of the legacies, be little or no residue. The purpose is apparent to avoid a failure of disposition of any of his property, rather than to devise any considerable portion of his real estate. No other devise of lands is made than that contained in the last clause. An intention to burden the devise with the payment of the legacies and all the attendant liabilities for so small an estate would hardly seem probable. Without much assistance from the reported cases and with some hesitancy, I conclude, in all the circumstances, that it *694 was the intention of the testator to effect an equitable conversion of his real estate, and that there is an implied power of sale which it becomes the duty of the administrator with the will annexed to execute. This inference is somewhat aided by the opinion of Mr. Justice Dwight, given in the case of Van Sickle v. Baylan and others (unreported), whicn in many respects was similar to the case at bar. I cannot now say that the administrator should be personally charged for not having sold the land before.
The objections to the account relating to the money expended for a monument must be overruled. I do not think it was unreasonable.
The administrator should be charged the value of the building taken down, ten dollars.
The crops growing upon the place at the decedent’s death were personal property, and formed a part of the corpus of the estate,' as they were needed for payment of debts and legacies. They are to be accounted for by the administrator. 34 N. Y., 347. The account must be surcharged to that extent, with interest thereon. He has produced no vouchers, and for that reason cannot be credited with any payment on account of the crops. Code, § 2734. The taxes levied and paid during the life of the widow were payable by her, and cannot be allowed as against the estate.
The claim that the administrator be charged with the value of the personal property unsold cannot be allowed.
It is claimed that the administrator should be charged with the difference between the amount for which a village lot, belonging to the deceased, sold upon the foreclosure of mortgages thereon, and the actual value of the property as proven. The mortgages were liens upon the property when the testator died. It does not appear whether both mortgages were foreclosed, or whether the sale was upon foreclosure of the first or second of the two incumbrances.
The administrator attempted to be present at the sale, but was late, and the property had been sold when he arrived. It is contended upon the following authorities that it was the duty of the administrator to attend the sale and bid off the property.
In the case of Clark v. Clark (8 Paige, 152), it was held that when executors, are obliged to foreclose a mortgage belonging to the estate, if the property will sell for a sum below the actual value, it is their duty to bid it in and hold it for a future sale. This was virtually a holding of the same property in another form, until a better price could be obtained. In the present case the administrator, I think, would have been running a risk in purchasing the property, that the court ought not to say he ought to do. If this was the foreclosure of a second mortgage he would have incurred the liability of costs upon another foreclos *695 ure. He would have had to use the funds of the estate for the purchase, which he might be called upon to account for and be required to pay out to other creditors. While the sale of the property at an advance would have enured to the benefit of the estate, any loss might be personally chargeable to him. The sale was public, and presumably for as much as another similar sale would have produced. Why should an executor or administrator be required to purchase property of which the equity of redemption belonged to the estate, because he could have made a profit for the estate, when he would not be justified in speculating in other real estate, which he deemed to be profitable investments?
The other case cited (Valentine v. Belden, 20 Hun, 541) was similar to the case above cited. The mortgage being foreclosed was one of the assets of the estate, and the property was taken in place of the mortgage. The principle does not extend to the circumstances of this case, and I cannot surcharge the account with the loss as requested.
The charge of fourteen dollars of lettering monument is concededly wrong, and must be disallowed.
In all other respects the account will be approved.
The claim of Jonathan S. Manro has practically been allowed by the executor, and no other mention need be made of it here.
Let findings be made accordingly.