Under 2 Rev. St. N. Y. p. 83, § 6, subds. 5, 6, which provide that crops growing on land of a decedent at the time of his death shall go to his personal representative, and be applied and distributed as personal estate, it is the duty of the personal representative to take possession of a growing crop, in the first instance, for the purposes of administration; but where the land on which the crop is growing has been specifically devised, and the crop is not needed for the payment of debts, it goes to the devisee as a chattel specifically bequeathed, unless a contrary intention plainly appears from the will.

2. SAME—CROPS ON LAND SPECIFICALLY DEVISED.

A clause in the will which directs that, after payment of testator's debts and the cost of a monument, his personal property shall be equally divided among all his children, does not show an intention of testator that growing crops on land specifically devised shall pass into the residue of his estate, to be divided with the personal property.

Application for the judicial settlement of the accounts of the executors of Moses S. Clemans, deceased. On exception to the executors' account, a referee was appointed to hear and determine the matter. His report was in favor of the executors, and the contestant excepted.

*W. D. Shuart,* for executors. *J. H. Chadsey,* for contestant.

ADLINGTON, S. The above-named decedent died March 12, 1888, leaving a will dated January 21, 1880, which has been duly admitted to probate. The will first directs the payment of debts, and then devises to different members of testator's family seven distinct parcels of land. Then comes the ninth and last dispositive clause, which is as follows, viz.: *Ninth.* "From my personal property the debts are to be payed and the funeral expenses. Then if there shall be a monument erected at my grave costing not less than $500, to be for the executors to decid the amount if greate than $500. Then, if anything is left from the personal property, it shall be equaly divided between my children, share and share alike." Proceedings for an accounting have been duly taken by the executors. Objections to their account were filed by the contestant, and the whole matter was referred for trial and determination. The referee's report has been filed, and an exception thereto brings up for consideration the only question now in dispute, to-wit, the ownership of a crop of wheat which at the time of the testator's death was growing upon lands devised to Mary S. Osborn and Amasa Clemans. Nineteen-thirtieths of the wheat is conceded to have been upon land devised to the former, and the remainder upon that devised to the latter. The executors gathered and sold the crop, realizing therefrom the net sum of $655, which they now maintain should be equally divided among all the children of the testator under the directions of the said ninth clause of the will. The devisees claim that by implication of law the growing crop was specifically bequeathed to them as a part of the devise, and, that having been sold, the proceeds belong to them. The referee sustained the view of the executors. The testator left other personal property, which amounts to over $3,300 after payment of all debts and funeral expenses, including the erection of a monument.

The rules of the common law on the question here in issue may be briefly stated as follows, viz.: *First,* crops growing on the land of a decedent at the time of his death are personal property; *second,* if the decedent dies intestate, or testate without devising his land, such crops go not to the heir, but to the executor or administrator of the decedent, for payment of debts and for distribution according to law; *third,* if the decedent dies testate, having devised the land on which crops are then growing, such crops go to the devisee, and not to the executor. The presumed intention of the testator that he who takes the land shall take the crops which belong to it is one reason for the

rule last stated, and the principle that every man's donation shall be taken most strongly against himself and those claiming under him is another. These propositions are abundantly sustained by the following authorities: 1 Williams, Ex'rs, (Perkins' 6th Amer. Ed.) 781, (710,) 785, (714;) Toll. Ex'rs, 150, 203; 3 Redf. Wills, (3d Ed.) 154; McClel. Sur. Pr. (3d Ed.) 240; *Spencer's Case*, Winch, 51; *Anon.*, Cro. Eliz. 61; *Dennett* v. *Hopkinson*, 63 Me. 350; *Budd* v. *Hiler*, 27 N. J. Law, 43; *Shofner* v. *Shofner*, 5 Sneed, 94; *Bradner* v. *Faulkner*, 34 N. Y. 347: *Stall* v. *Wilbur*, 77 N. Y. 158. The Revised Statutes of this state (volume 2, p. 83, § 6, subds. 5, 6,) makes a slight change in the rule of the common law as to growing crops on devised land. That change and its effect have been clearly and admirably stated in the last two cases cited, substantially as follows: The Revised Statutes provide that the growing crops shall go to the executor or administrator, to be applied and distributed as personal estate. Under this provision the personal representative takes possession of the growing crops, in the first instance, as he does of all other personal property, for the purpose of administration according to law. But, when the land on which the crop is growing has been so devised as to convey it to the devisee, unless a contrary intention plainly appears from the will, the crop is put on the footing of a chattel specifically bequeathed. If not wanted for the payment of debts or legacies, it goes to the devisee. It cannot be sold for the payment of general legacies, and can be applied to the payment of debts only after other assets not specifically bequeathed have been so applied. The same language that would devise or bequeath such crops before the statute will pass them now. Under these decisions, it was the obvious duty of these executors to take possession of the growing crops on the lands devised to Mary S. Osborn and Amasa Clemans, and to harvest the same. If the proceeds thereof were needed to pay the debts of the testator, they could sell the grain and apply the money received for it to the payment of such debts. If, however, the other personal property of the decedent was sufficient to pay all legal indebtedness, the executors, upon ascertaining that fact, should have turned over the crops or their proceeds, if sold, to the devisees, as personalty specifically bequeathed to them by the will, unless that instrument gave direction for some other disposition thereof.

The claim is made on the part of the executors that such direction is given in the latter part of the ninth clause of the will, and that by the words, "if anything is left from the personal property, it shall be equally divided between my children, share and share alike," the testator indicated his intention to take from the devisees the crops growing on the land at his death, to give them in equal shares to all of his children. The clause here in question must be considered in its relation to the other provisions of the will, and, in arriving at the intention of the testator as expressed in that instrument, all of its parts must be construed together. It seems to me that the words above quoted have not the effect claimed for them. They signify no more than is expressed by the usual residuary clause found in wills relating to personal estate. They carry only what had not been legally and effectually disposed of by the foregoing provisions of the whole will. *Thompson* v. *Thompson*, 3 Dem. Sur. 409–412; *Beekman* v. *Bonsor*, 23 N. Y. 312; *Christie* v. *Hawley*, 67 N. Y. 133–137; *Kerr* v. *Dougherty*, 79 N. Y. 327, 346. The growing crops on the lands devised had been, previously, specifically bequeathed, by the force of the devises themselves, and would not, therefore, be carried away from the devisees and swept into the general residue, on which the words in the ninth clause could take effect. That such language is insufficient evidence of a testator's intention to deprive his devisee of a growing crop is clearly established by the decision in *Bradner* v. *Faulkner*, 34 N. Y. 347. The controversy in that case was over a crop of wheat growing at testator's death upon land devised by the will of one Amariah Hammond. A copy of that will, with the briefs of counsel, is found in the printed case, on appeal

to the court of appeals, on file in the Rochester law library. I infer from the provisions of the will that Mr. Hammond left two daughters, who were his only heirs at law and next of kin. By his will he devises to each of these daughters certain parcels of land, and to one the sum of $16,000, to equalize her share in his estate with that of the other. He then directs that his daughters shall furnish a suitable maintenance for life to a servant named, which should be a charge on the land devised. He next states that it is his intention to give his daughters, in all respects, equal advantages in the disposition of his estate; and, after some directions here unimportant, closes with the following words: "All the rest and residue of my estate whatsoever, of which I may die seised or possessed, of whatsoever kind or nature the same may be, not hereinbefore given or disposed of, I give, devise, and bequeath to my daughters." In its general features, the will of Mr. Hammond is singularly like the one here under consideration. The principles of construction applicable to the one are equally so to the other. The claim that the testator intended that the crops growing on his land at his death should be distributed under the residuary clause of the will was urged upon the court of appeals in the printed brief of the executor's counsel; but, in its opinion, after referring to the rule that growing crops pass to the devisee, upon the presumed intention of the testator that he who takes the land should also take the crops which belong to it, the court of appeals says: "There is nothing in this will to alter or affect the presumed intention of the testator." To the same effect are the following cases, viz.: *Blake* v. *Gibbs,* 5 Russ. 13, note; *Rudge* v. *Winnall,* 12 Beav. 357; *Vaisey* v. *Reynolds,* 5 Russ. 12; *Pratte* v. *Coffman,* 27 Mo. 424.

I am of the opinion that the wheat passed as a specific bequest to the devisees of the land, and, as it has been sold, that they are now entitled to its proceeds. There may be a decree modifying the referee's report, and settling the account in accordance herewith, on two days' notice.